INTERNATIONAL GENERAL ELECTRIC COMPANY OF PUERTO RICO, Plaintiff and Appellant, v. RAFAEL BUSCAGLIA, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 9206. Argued March 6, 1946.—Decided June 7, 1946.

250

*James R. Beverley, R. Castro Fernández* and *José López Baralt* for appellant. *E. Campos del Toro, Attorney General,* and *J. B. Fernández Badillo, Attorney of the Department of Justice,* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

The plaintiff sued the Treasurer in the district court for the refund of payments made under protest of $3,964.19 as taxes and $1,585.61 as penalties and interest. The opinion, judgment and a subsequent order of the lower court, when read together, are in effect a judgment against the plaintiff, which has appealed.

Between 1931 and 1936 the plaintiff sold refrigerators and radios under conditional sales contracts. These contracts

provided for deferred instalment payments of the purchase price. The "adjusted and agreed" price for radios was made up as follows: (1) Cash, $97.40; (2) Tax, $9.74; (3) Serv. Fin. & Int., $8.50, the "total value" being $115.64. The refrigerators were sold under similar contracts for $305.28 made up of (1) Cash, $206; (2) Tax, $20.60; (3) Serv. Fin. & Int., $60.68; Installation, $18.[1]

During this period sales of these articles were taxed at 10 per cent of the sales price. Section 16, paragraphs 9 and 27, Act No. 85, Laws of Puerto Rico, 1925 (p. 584), as amended by Act No. 83, Laws of Puerto Rico, 1931 (p. 504). The sales price, for purposes of this tax, was defined in § 4 of Act No. 83 as "the exact price at which the . . . commodity is sold . . . ", with the further provision that "In no case shall a price be accepted as the selling price for the purpose of taxation, which is less than the price currently paid on the market of Porto Rico for similar articles at the time the taxable . . . commodity is sold . . . "

The plaintiff deducted item 3—the charge for "Serv. Fin. & Int."—from the sales price before it computed and paid the taxes on the conditional sales it made. The Treasurer does not contend that all of item 3 is part of the sales price and taxable as such. He concedes that under § 26 of the Regulations the portion of item 3 which is legal interest on the unpaid purchase price is not part of the sales price.[2] But he argues that item 3 exceeds legal interest on the conditional sales price and that the said excess is taxable as part of

---

[1] The charge for "Installation" of refrigerators is not involved in this case, as the Treasurer does not contend that it is part of the sales price and taxable as such.

[2] Section 26 reads as follows: "In the cases of articles introduced to be sold under a conditional sales contract the tax will be collected on the price at which the article is sold on conditional sale and interest at the legal rate which may have been charged on the said conditional sales price may be deducted from the sales price, provided that such sales are made through invoices in which the interest is stated separately from the sales price of the article thus sold."

the sales price. On the other hand, the position of the plaintiff is that no portion of item 3 is part of the sales price on two alternative theories: (1) it consists exclusively of legal interest; (2) it includes charges other than interest, but these are nevertheless not part of the sales price.

Before examining the first theory of the plaintiff, it should be noted that the testimony does not show that item 3 consisted exclusively of interest. On the contrary, the conditional sales contracts provided for a lump sum charge for "Serv. Fin. & Int." Although there is no breakdown of this item in the contract, the plaintiff's auditor testified that "Serv. Fin. & Int." actually consisted of two separate amounts: (1) a specific sum, which was 6 per cent interest; and (2) another specific sum, which was charged for such things as service, financing, credit investigation, the cost of recording the conditional sales contracts, payment of commissions to collectors, expenses of carrying the accounts on its books, the expenses for pamphlets, receipts and notices, and other collection expenses.[3] .

The fact that a government investigator in his report characterized these charges as an overstatement of the interest allowable as a deduction is not controlling. The contract and the undisputed testimony of the plaintiff show the contrary. Indeed, the same investigator indicated agreement

---

[3] The testimony of the plaintiff was that item 3 consisted of $8.50 for radios, with $5.23 allocated to 6 per cent interest and $3.27 to the charges other than interest. A similar allocation was made for refrigerators.

It should be noted that the record shows and the parties apparently agree that the word "Service" in the phrase "Serv. Fin. & Int." covers service relating to collection of the deferred instalment payments, and not service in the sense of keeping the refrigerator or radio in good operating order. There is one isolated statement in the brief of the plaintiff that a charge for "servicing the refrigerator when it is out of order" would be an expense subsequent to sale; but the plaintiff nowhere contends nor does the testimony show that such a charge was actually made here under "Service". Consequently, the question whether a separate and specific charge for such mechanical service, as in the case of installation of a refrigerator, would be considered as not part of the purchase price is not involved in this case.

with the testimony of the plaintiff by testifying that the tax was underpaid because the second portion of "Serv. Fin. & Int." was part of the sales price rather than interest.

If we were confined to the testimony adduced at the trial, we should therefore not be disposed to determine this case on the theory that item 3 consisted of interest exclusively. But there is something more here. After the trial, the district court entered an opinion and judgment which provided that the plaintiff was entitled to refund of the taxes imposed on the interest on the unpaid purchase price of articles sold under conditional sales contracts, but not of the taxes collected on other charges. But the Treasurer has always conceded that such interest could be deducted; the only controversy between the parties has been whether the charges in item 3 which were in addition to 6 per cent interest could be deducted on the theory that they were either also interest or in any event were not part of the sales price. The opinion and judgment therefore failed to decide the only issues which were litigated.

The plaintiff thereupon moved to amend the judgment to provide for refund as prayed in the complaint, contending that its suit was for interest exclusively, and not for other charges. The Treasurer opposed this motion on the ground that the pleadings and testimony showed that the dispute involved charges other than interest. As we have seen, the position the Treasurer took was correct in view of the testimony. But the Treasurer did not adhere to this position. On the same date as the opposition of the Treasurer was filed, the parties filed a stipulation varying the facts adduced at the trial. The stipulation provided that "the method used by the Treasurer to determine the said item of interest is to calculate, at the legal contractual rate (12 per cent until August 17, 1933 and 9 per cent thereafter) the interest corresponding to each instalment from the date of the sale until its due date. . . . "; whereas the method use by the plain-

tiff "is to calculate interest, at a rate not higher than the legal contractual rate, on the whole amount of the deferred price during the entire period of the instalments which the conditional vendee is interested in paying for the article purchased. For example, in the . . . model contract the said item . . . represents a little less than 9 per cent . . . "

The parties further stipulated that if the method used by the plaintiff in calculating such interest was illegal, the court should enter a judgment dismissing the complaint; if it was not illegal, the court should enter judgment for the plaintiff for the sums claimed herein. Whereupon, pursuant to the stipulation, the district court, finding that interest at the maximum contractual statutory rate of 9 per cent is usurious if calculated with the method used by the plaintiff, entered an order that the Treasurer was not obliged to make any refund.

Ordinarily the parties to a law suit are at liberty to stipulate the facts pertinent thereto. But here there was a trial at which the testimony showed that only the first of the two lump sum charges listed under "Serv. Fin. & Int." was for interest, and that interest was charged at 6 per cent. Yet the parties proceeded by stipulation to change the facts before the court, evidenced by both documentary and oral testimony, so that "Serv. Fin. & Int." should instead be considered as interest exclusively at the rate of 9 per cent, but calculated by different methods.

However, we shall not undertake to inquire whether under these circumstances the court should have decided the case as it did on the basis of the stipulation, or on the basis of the testimony. We need not decide this question as we reach the same conclusion whether "Serv. Fin. & Int." be considered as 9 per cent interest exclusively or as interest at 6 per cent plus additional charges for items other than interest.

I

 The first theory of the plaintiff is that item 3, considered as 9 per cent interest exclusively, is not taxable as part of the sales price. Here the plaintiff reasons as follows: Section 26 of the Regulations provides that legal interest is no part of the unpaid purchase price; under § 1, Act No. 5, Laws of Puerto Rico, 1933, Special Session,[4] the maximum contractual rate of interest is 9 per cent where as here less than $3,000 is involved; it is not usurious under § 1 of Act No. 5 to provide by agreement for the collection of interest during the life of a conditional sales contract at 9 per cent on the full amount of the purchase price instead of on the decreasing unpaid balances which remain due after payment of instalments of the purchase price; item 3 is not more than 9 per cent interest when calculated in this manner; item 3 is therefore exclusively legal interest, and under § 26 of the Regulations is not part of the sales price and is not taxable as such.

This argument of the plaintiff assumes that the stipulation should be interpreted as providing that there was an agreement, as required by § 1 of Act No. 5, both that 9 per cent interest should be paid and that it should be calculated in this manner. Accepting this interpretation *arguendo,* this

---

[4] This Section reads as follows: "Section 1.—Section 1 of 'An Act to fix a legal rate of interest on all obligations, approved March 1, 1902, as amended by an Act of March 12, 1903, is hereby amended to read as follows:

" 'Section 1.—That in the absence of an agreement in writing entered into and executed at the time, the rate of interest upon the loan or forbearance of money or goods or upon any variety of obligation or contract or upon unpaid judgments, shall be at the rate of six (6) dollars annually, on each one hundred (100) dollars or upon its equivalent in value, and at the same rate for a greater or less sum or for a longer or shorter period; *Provided, however,* That no rate of interest shall be fixed by special agreement in excess of nine (9) dollars a year on each one hundred (100) dollars or upon its equivalent in value, when the capital the object of the loan or of the agreement does not exceed three thousand (3,000) dollars, and eight (8) dollars a year on each one hundred (100) dollars when the capital passes said sum. Within the limits here defined, it shall be lawful to discount bills and notes and other similar obligations.' " Compilation of the Revised Statutes and Codes of Puerto Rico, 1941, p. 1254 (Span. ed.).

still leaves for decision the question: despite agreement between the parties to that effect, is such interest usurious under § 1?

The nub of the plaintiff's argument is that it is not usurious to continue to collect interest at the maximum statutory rate on the entire amount of a loan of money after part of the principal obligation has been paid; and that since it is legal to collect such interest on a loan, *a fortiori* such interest on the unpaid purchase price of goods sold pursuant to a conditional sales contract is valid. But we cannot agree that interest on a loan calculated in this manner is not usurious under § 1 of Act No. 5. On the contrary, "In the absence of express statutes permitting the same, the Courts have uniformly held that in the case of an instalment loan, the computation of an interest rate not exceeding the statutory maximum, on the original amount of the loan for the entire term of the loan, instead of on the decreasing unpaid balances, results in usury, if the amount of interest thus charged exceeds the maximum statutory rate computed on the decreasing unpaid balance for the time that such balances are outstanding." *Vee Bee Service Company* v. *Household Finance Corp.*, 51 N.Y.S. (2d) 590, 606–7 (1944), citing numerous cases to this effect; *Brower* v. *Life Ins. Co.*, 86 Fed. 748 (Circuit Court, N.C., 1898); *Connor* v. *Minier*, 288 Pac. 23 (Calif. 1930). The rule is stated in 6 Williston on Contracts, § 1695, p. 4801, with supporting cases cited in footnote 14, as follows: "The courts in general, however, condemn as usurious a bargain for payment of interest at the maximum legal rate for the entire period of a loan when advance payments of the principal in instalments are stipulated for."

We are not satisfied that the cases cited by the plaintiff —*Harrop* v. *National Loan & Inv. Co.*, 204 S.W. 878 (Tex. 1918); *Western Loan Building Co.* v. *McGillivrae*, 251 Pac. 770 (Wash. 1926), particularly the latter—support its posi-

tion that such agreed interest on a loan is not usurious. But assuming they do, they contain no reasoning on this question, and are against the overwhelming weight of authority.

We find nothing in § 26 of the Regulations to warrant the statement of the plaintiff that it expressly authorizes the calculations of 9 per cent interest in the manner advocated by the plaintiff. Nor can we agree with the argument of the plaintiff that the phrase "for a longer . . . period" in § 1 of Act No. 5 permits an agreement for the collection of interest throughout a three-year conditional sales contract at 27 per cent or 9 per cent annually for the entire three years. That phrase must be read as a whole—"for a longer or shorter period"—which in the context of the statute simply means that the rate of interest permitted is the same, whether the loan is for an annual, longer or shorter period.

We also find without merit the argument of the plaintiff that since § 1 contains no provision as to the manner of collecting interest, the parties are at liberty to contract as to the manner of calculating the contractual rate of interest. We have already seen the difficulty with this argument, *Vee Bee Service Company* v. *Household Finance Corp., supra:* the manner of computation advocated by the plaintiff results in the collection of interest in excess of 9 per cent, which is prohibited by § 1 of Act No. 5.

We have been assuming that the stipulation meant that the plaintiff calculated the interest on the entire purchase price during the life on the loan despite the payment of instalments on the principal obligation pursuant to an agreement of the parties that this method of calculation was to be used. But the stipulation is susceptible of a different interpretation: the parties agreed to interest at 9 per cent but without any agreement as to the method of its calculation. However, this would not affect the result we have reached. The cases relied on by the Treasurer—*Connecticut* v. *Jackson,* 1 Johns. Ch. 13 (N.Y. 1814), 7 Am. Dec. 471; *Hart* v. *Dor-*

*man,* 2 Fla. 445 (1849), annotated in 50 Am. Dec. 285; *Story* v. *Livingston,* 38 U. S. 357, 370; *Woodward* v. *Jewell,* 140 U.S. 247; *Wallace* v. *Glaser,* 46 N. W. 227 (Mich. 1890); *Straus* v. *Brooks,* 126 S.W. (2d) 542 (Tex. 1939); *Savage* v. *Howell,* 118 P. (2d) 1113 (N.M. 1940)—demonstrate that the majority rule, with which we agree, is that interest is calculated on the unpaid balance of the principal only, in the absence of an agreement to the contrary.

If the stipulation provided for interest at 9 per cent with an agreement for it to be calculated as advocated by the plaintiff, such interest was usurious and could not be deducted from the sales price under § 26 of the Regulations, which provides that only *legal* interest can be deducted. If the stipulation meant that the parties had not agreed as to the method of calculation, 9 per cent interest can be collected only on unpaid balances. We therefore conclude that under either theory, the parties having stipulated that item 3 shall be considered as 9 per cent interest exclusively, the plaintiff could deduct under § 26 of the Regulations only 9 per cent interest calculated on decreasing unpaid balances of the purchase price. And the parties stipulated that if this be the law, the plaintiff was not entitled to any refund.[5]

## II

The second theory of the plaintiff is based on the testimony adduced at the trial. As already noted, this testimony was that item 3 consisted of two specific sums: (*a*) one for 6 per cent interest; (*b*) another for certain "finance" charges other than interest, see footnote 3. As to (*a*), the

---

[5] The plaintiff does not cite, in support of its arguments as to I, cases which we discuss in II and which hold that "finance" charges in a conditional sale of goods do not constitute usury even if such charges are beyond the maximum statutory rate if such charges are considered as interest. Annotation, 143 A.L.R. 238. The plaintiff is apparently aware that these authorities are not in point as to I because, as we shall see, the *rationale* of those cases is that such charges are not usurious because under such contracts they are part of the purchase price rather than interest. They could therefore not apply here where by stipulation all of item 3 is classified as interest.

Treasurer concedes that under § 26 of the Regulations such interest is deductible from the sales price in calculating the tax.[6] The plaintiff contends that as to (*b*), even though these charges are not interest, they are nevertheless not part of the sales price and therefore not taxable as such.[7] Its argument is that these charges are not part of the sales price (*a*) because they "represent the sum *in addition to the sales price of the article* which the purchaser agrees to pay for the privilege of paying the sales price of the article in instalments"; and (*b*) because the charges "compensate the vendor for expenses subsequent to the sale."

 (*a*) *Are these charges in addition to the sales price and therefore not taxable?* Here the plaintiff relies on cases which hold that such "finance" charges in conditional sales contracts are not violative of usury statutes despite the fact that the amounts charged, if considered as interest on the unpaid purchase price, exceed the maximum rate of interest allowed under such statutes. Annotations, 143 A.L.R. 238; 57 A.L.R. 880; 48 A.L.R. 1442. Two arguments might be made against application of these authorities here. In the first place, we are not as in those cases concerned with whether such charges are usurious interest and therefore illegal as

---

[6] The Treasurer does not contend that the 6 per cent interest charged herein was improper on the theory that it was collected on the entire purchase price during the life of the contract with no decrease in interest after payment of instalments on the purchase price. Interest at 6 per cent collected in this manner on monthly instalment contracts for one and three-year periods would not be deductible under § 26 of the Regulations to the extent that it exceeded the maximum contractual rate of 9 per cent interest collected only on unpaid instalments and not on the entire purchase price.

[7] Section 26 of the Regulations provides that legal interest may be deducted from the sales price provided interest is shown on the invoice separately from the sales price. It might be argued that, in listing the two charges embodied in item 3—one for 6 per cent interest and one for charges other than interest—in one entry in the conditional sales contract called "Serv. Fin. & Int.", the plaintiff failed to comply with § 26 and therefore can deduct at the most only the former. But we put that argument aside and proceed to a determination of whether charges other than interest are not part of the purchase price, despite the fact that in the conditional sales contract they were lumped together with interest in the entry entitled "Serv. Fin. & Int."

between the contracting parties. We seek only to determine if money due under a conditional sales contract by the purchaser of goods to the vendor—whether the arrangement be legal or illegal as between them—is part of the sales price thereof as defined in a tax statute. Secondly, those cases all deal with the situation on the assumption that these charges are assimilated to interest; whereas here the plaintiff's own testimony was that these charges were for something other than interest.[8]

Nevertheless, we put these arguments to one side. And we assume, without deciding, (a) that we would adopt in this jurisdiction the rule laid down in these cases, and (b) that this rule is pertinent to the facts of this case. But even when we take that position, which is the most favorable one possible for the plaintiff, we find that the *rationale* of those cases, when applied to the facts here, compels a conclusion contrary to the contention of the plaintiff.

The theory of these cases is that such "finance" charges, when made in connection with a conditional sale, are not paid for the loan of money but rather are a part of the unpaid purchase price for the goods which the purchaser agrees to pay. Or, stated another way, the vendor may set one price for cash sales and a higher price for sales on credit. *Harper v. Futrell,* 164 S.W. (2d) 995 (Ark. 1942); *Dunn v. Midland Loan Finance Corporation,* 289 N.W. 411 (Minn. 1939); *Commercial Credit Co. v. Tarwater,* 110 So. 39 (Ala. 1926); 143 A.L.R. 238, 251; Usury Statutes and Instalment Sales, 48 Yale L. J. 1102; Berger, Usury in Instalment Sales, 2 Law

[8] In a controversy between a debtor and a creditor as to whether a loan or conditional sales contract involves usury the courts are not bound by a label calling what is in substance interest by another name. *Vee Bee Service Company v. Household Finance Corp., supra;* 143 A.L.R. 238. But those cases are scarcely authority for the converse proposition that a vendor taxpayer whose own testimony shows that certain charges were made for matters other than interest is entitled under § 26 of the Regulations to deduct such charges as interest on the sales price.

& Contemp. Prob. 148; Ecker, Commentary on "Usury in Instalment Sales", 2 Law & Contemp. Prob. 173; 23 Cornell L. Q. 619; 35 Col. L. Rev. 1322.[9]

It may be true, as these cases assert, that the extension of credit is one of the business factors which every merchant weighs in fixing his sales price; and that as a consequence the difference in price between a cash and a conditional sale on a deferred payment basis is, at least in part, not interest but represents, to the extent that it is in excess of legal interest, a higher purchase price which is justified by the various expenses and risks of loss not present in a cash sale. We assume, without deciding, that if the issue were presented in an appropriate case, we would be persuaded by these considerations and hold that such "finance" charges, when made in connection with a conditional sale, are not usurious because they are part of the purchase price, and not interest. But that conclusion can be of little comfort to the plaintiff precisely because under our statute all charges which are a part of the sales price are subject to the tax. Such "additions" to the sales price are therefore part of the sales price and consequently subject to the tax herein.

(b) *Are these charges expenses subsequent to the sale and therefore not taxable?*

This contention is closely related, if not substantially similar, to the argument made by the plaintiff in (a) that these charges are in addition to and not part of the purchase price. There are countless operating and overhead expenses

---

[9] Cf. § 3 of Act No. 47, Laws of Puerto Rico, 1916, Compilation of the Revised Statutes and Codes of Puerto Rico, 1941, p. 1357 (Span. ed.), reading in part as follows:

"Section 3.—That section 4 of 'An Act to fix a legal rate of interest on all obligations,' approved March 1, 1902, and amended by an Act of March 14, 1907, is hereby amended so as to read as follows:

" 'Section 4.—No person except as authorized by section 3 of this Act, shall demand or receive, directly or indirectly any money or goods, at any greater rate, of interest for the loan or extension of time of said loan, than the rate provided for herein. *Nothing in this Act shall be taken to prohibit the sale of goods for cash at a less price than for credit.*' " (Italics ours.)

which a merchant incurs in addition to the cost to him of the goods he sells. And he must necessarily add these expenses to his sales prices to the public, directly or indirectly, if he is to stay in business. Many of these expenses—for example, salaries, rent and advertising—are usually attributable to the general operations of a business rather than to specific articles. Yet there is no room for the contention that under § 4 of Act No. 83—which provides that the sales price for purposes of this tax shall be the current market price—a taxpayer can deduct such expenses from the taxable sales price. Cost of the article, expenses and profit are the factors which determine selling price. But once the latter is calculated, to permit deductions therefrom in computing the tax on the sales price would be to deviate from the legislative mandate.

The plaintiff does not dispute this proposition. It contends, however, that only the expenses which are incurred prior to or contemporaneous with sale are a part of the sales price and therefore cannot be deducted from the sales price in calculating the tax; and that expenses subsequent to sale are not a part of the sales price and are therefore not included in the sum taxed.

In making this argument the plaintiff relies on § 24 of the Regulations which prohibits the deduction from the sales price of "agent's commissions and other expenses", and on § 25 which prohibits deduction of "cartage and delivery expenses and other similar expenses which may be included in the sales price of the article." The plaintiff contends that under the doctrine of *ejusdem generis* the prohibition against deductions from the sales price extends only to expenses, similar to saleman's commissions and delivery expenses, which the plaintiff characterizes as expenses prior to or contemporaneous with sale; and that therefore the charges herein, which the plaintiff argues are dissimilar because they are incurred subsequent to sale, may be deducted from the taxable base as not being part of the sales price.

In support of this reasoning, the plaintiff cites *Fitch Co. v. United States,* 323 U.S. 582. That case involved a Federal statute which taxed only the manufacturer's or wholesaler's sales price. It specifically excluded from the taxable sales price expenses for delivery or other similar charges which the manufacturer incurs in a sale to a retail merchant. The Court, invoking the language of the statute, the intent of Congress and *ejusdem generis,* held that under that statute advertising and selling expenses of the manufacturer were not "other similar charges" in the category of delivery expenses and therefore were not deductible from the taxable sales price. The Court points out, among other things, that advertising and selling expenses of a manufacturer are incurred prior, while delivery and similar expenses are incurred subsequent, to a sale to a retail merchant.

Our statute is quite different. In this particular case the tax is imposed on the retail sales price. And it covers a much wider range: charges for delivery to the retail customer are part of the taxable sales price. Indeed, if we were to apply to our facts the finding of the *Fitch* case that delivery expenses are subsequent to sale, the plaintiff's theory would fail without further discussion because the plaintiff contends the opposite: delivery expenses are not subsequent but are prior to or contemporaneous with sale; expenses subsequent to sale like "finance" charges are therefore not similar to delivery charges; and as a consequence, subsequent expenses like "finance" charges are deductible from the taxable sales price although § 25 of the Regulations prohibits such deductions of delivery and other similar expenses.

But even if we agreed with the plaintiff that, despite the fact that in a sale by a manufacturer delivery expenses are subsequent to sale somehow the rule is different in a retail sale and in the latter delivery expenses are contemporaneous with the sale, the *Fitch* case and the doctrine of *ejusdem generis* would lend support to the theory that §§ 24 and 25 of

the Regulations authorize deduction of these "finance" charges from the sales price only if we found something in our statute or Regulations making all expenses subsequent to sale deductible and all prior to sale nondeductible. But neither the statute nor the Regulations draws any such dividing line. Rather the impact of the statute is specific: it taxes the entire sales price. And §§ 24 and 25 of the Regulations bear no relation to the problem before us. They prohibit a vendor from deducting from his sales price, in calculating the tax, agent's commissions, delivery and other similar expenses. The vendor therefore must include such items in his sales price for tax purposes. But as to other expenses, the vendor, in fixing his sales price, may or may not take into consideration certain expenses which he has incurred either prior to sale or will incur subsequent to sale, such as "finance" expenses which require the sales price for credit sales to be higher than the cash sales price. Generally speaking, that is for the vendor to determine. But once he fixes a higher price for credit sales, the entire amount thereof—whether or not the vendor included therein "finance" charges other than interest—is subject to the tax. To hold otherwise would be to open the door to the contention that in both cash and credit sales a vendor could bill the vendee separately for administration, advertising or selling expenses and then deduct them from the sales price for purposes of calculating the tax thereon, until finally the vendor would be paying the tax on the cost to him of the merchandise, and not on the sales price to his vendee as contemplated by the statute.

Recognizing that a charge for interest on a conditional sale, when billed separately, is not part of the purchase price, but rather the return on the capital of which the vendor is temporarily deprived by a conditional sale, § 26 of the Regulations properly provides that this is not part of the taxable sales price. Similarly, the Treasurer did not include in cal-

culating the tax on refrigerators a separate charge which has no relation to the sales price of the article—the charge for installation. But the fact that §§ 24 and 25 of the Regulations provide that commissions, delivery and similar expenses may *not* be deducted, even if we assume that these expenses occur prior to or contemporaneous with sale, does not lead to the conclusion, whether by *ejusdem generis* or otherwise, that other expenses *may* be deducted simply because they are incurred subsequent to sale. On the contrary, the test remains what it always was: were the charges in question part of the purchase price? And we have already seen that they were. If more be needed, it will be recalled that the conditional sales contract itself recites that the conditional sale "will be effected for the adjusted and agreed price" of several specific sums, one of which includes these "finance" charges.

The last contention of the plaintiff is that the "finance charge to the purchaser is made by the vendor to indemnify himself for the expenses which he must necessarily incur *subsequent to the sale* and delivery of the article, because of the sale of the article on instalments or on credit. . . . At the most this charge could be classified or defined as the *price of service* rendered by the vendor to the purchaser *subsequent* to the sale and delivery of the article. This is so much so that if this service is not rendered due to the fact that *subsequent* to execution of the contract of instalment sale if the purchaser decides to pay for the article in cash, the vendor eliminates this charge and confines itself to collecting interest on the deferred price from the date of execution of the contract until the date of the payment of the price of the article." But it is no answer to the point that these charges are part of the sales price to say that they are eliminated if the purchaser accelerates his payments. Perhaps under those circumstances the plaintiff would be entitled to a refund of the taxes paid on those charges. But that question is not involved in this case. When the contract was executed, the

charges were made; and they were made as part of the purchase price. That is enough to require their inclusion in the taxable sales price.

As a matter of fact, even if the test were that all expenses prior to sale are non-deductible and all expenses subsequent to sale are deductible, some of the items which are lumped together under "Serv. Fin. & Int." as one sum for "finance" charges, such as credit investigation, obviously are incurred prior to or contemporaneous with rather than subsequent to the sale; and others, such as expenses of carrying the accounts on its books and the expenses for pamphlets, receipts and notices, are attributable to general operating or overhead expenses in connection with credit sales rather than to the sale of specific articles.

A final argument can be made in support of the result we have reached. The plaintiff invokes §§ 24 and 25 of the Regulations and attempts, with the aid of *ejusdem generis,* to apply them to conditional sales. Those Sections have nothing on their face showing that they were intended to apply to the special situation of conditional sales. On the other hand, § 26 of the Regulations is addressed specifically to conditional sales. And it recites expressly that *interest* on a conditional sales contract is deductible. We need not go so far as to hold that under the theory of *expressio unius est exclussio alterius* only interest is deductible in a conditional sales contract. Here we need only say that charges other than interest on conditional sales are not deductible under § 26 or otherwise when the contract makes no attempt to state specifically the amount and purpose of each charge. Cf. footnote 7.

This point becomes clear when we recall that the theory of the plaintiff is bottomed on the premise that the sales price taxed—the current market price—is the same for both cash and credit sales, and that the additional charges other than interest in the latter are for services subsequent to the sale. It is evident that those are not the facts in this case, where

the charges are lumped together in one item of the sales price. We are not ruling that the parties cannot as to some items contract for *bona fide* services which (1) are to be rendered subsequent to the sale and which (2) are not to be considered as part of the sales price. Indeed, in this very case the charge for "Installation" has been so treated by the Treasurer. And the charge for some of the items lumped together here in a global sum, such as recording the conditional sales contract, could perhaps be the subject of such an arrangement. Cf. 23 Cornell L.Q. 619, 623; .6 Williston, *supra*, § 1694, p. 4792; Annotations, 1 A.L.R. 834, 105 A.L.R. 795; *Connor* v. *Minier, supra*, p. 25; *Bowden* v. *Gabel*, 76 P. (2d) 334 (Mont. 1937); *Vee Bee Service Co.* v. *Household Finance Corp., supra*, p. 604. But "Serv. Fin. & Int." was not excluded in the contract from the purchase price. Moreover, it included two lump sums: (*a*) 6 per cent interest; (*b*) charges other than interest. The latter may have included items which could be thus classified. But neither in the conditional sales contract nor apparently in the books of the plaintiff was there any segregation of the charges other than interest with a separate statement of the amount charged for each. They were all lumped together and a global charge was made for them. Under these circumstances we cannot say that (*b*) as a whole comes within that category. We therefore leave open the question whether under other circumstances some of the charges herein other than interest could be deducted from the sales price in calculating the tax herein.

The plaintiff having failed to demonstrate under either of its two theories that it was entitled to a refund of the taxes paid under protest, the judgment and order of the district court will be affirmed.