100 N.J. Super. 60 (1968)
241 A.2d 46
W.T. GRANT CO., A DELAWARE CORPORATION, PLAINTIFF,
v.
JOSEPH WALSH AND JANET WALSH, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, District Court, Middlesex County.
Decided March 8, 1968.
*61 Mr. David A. Rosenberg for plaintiff (Mr. Perry J. Martin, attorney).
Mr. William J. Hamilton, Jr. for defendant. (Messrs. Pincus, Shamy & Sheehan, attorneys).
*62 APPLEBY, J.C.D.C.
Plaintiff sues on a contract for the establishment of a retail installment sales account.
Defendant Janet P. Walsh entered plaintiff's North Brunswick store on June 13, 1967, for the purpose of purchasing sneakers for her two small boys, who accompanied her. While approaching the checkout counter, where she paid cash for her purchase, she was accosted by a saleslady, who inquired whether she desired to open a charge account. Mrs. Walsh declined, but the saleslady persisted, pleading that she would be awarded points in a contest. Mrs. Walsh finally capitulated and was taken to Joan Scott in the credit department. Mr. Walsh's name and address were written by Mrs. Scott on a form entitled "retail installment sales contract, GRANT'S CHARGE-IT PLAN", together with payment terms for an account of $200.00, plus interest for two years, carrying charges and insurance, all to be amortized at $10.00 per month, beginning one month from date. Clause L represented that Mrs. Walsh's husband had authorized her to sign and that both accepted liability for the purchase of family necessaries. Mrs. Walsh signed and was given a book of coupons of various denominations totaling $200.00, good for purchases in any of plaintiff's stores, all numbered and stamped "Void if detached". Mrs. Walsh testified that the entire transaction took five to seven minutes, during which she was distracted by her children; that Mrs. Scott did not explain the details of the plan; that Mrs. Scott told her that the coupons worked basically the same as a charge plate, and that she would be charged as they were used. Mrs. Scott testified that she told Mrs. Walsh: "You only pay for what you buy out of the coupon book", and asked her: "Will $10.00 a month be all right?" Mrs. Walsh understood this to mean the monthly payment after making purchases.
That evening Mrs. Walsh's small son ripped some coupons from the book, and she destroyed them all in the belief that they were now void, and that, in any event, they were meaningless unless used. Mrs. Walsh failed to make the first *63 payment on the account, and suit was instituted against her and Mr. Walsh.
Plaintiff's credit manager testified that redeemed coupons were never checked or centrally cleared, but simply destroyed monthly. He also indicated that plaintiff had other credit plans, and that Mrs. Walsh personally qualified for a regular charge plate account. Subsequently, prior to trial, Mr. Walsh disavowed in writing by certified mail his wife's authority to bind him.
Defendant contends that Mr. Walsh was not bound by Mrs. Walsh's signature and that there was failure of consideration, fraud, and usury in the transaction.
Paragraph L of the contract signed by Mrs. Walsh states: "Buyer, if over 21 and married, represents having authority from spouse to sign this retail installment sales contract and both accept liability, whether separated or divorced, for all purchases of family necessaries by means of coupon books or services purchases herein before notice is sent to seller by certified mail."
Plaintiff contends that this binds Mr. Walsh through the creation of an agency by estoppel. Quite aside from the general defenses of fraud, etc., defendant Mr. Walsh contends that he never saw the contract until he was served with the complaint. There is no basis for plaintiff's assumptions that Mrs. Walsh took a copy home and showed it to him.
Clause L specifically provides that both spouses accept liability for purchase of family necessaries. In the absence of any method for determining whether the coupons were ever spent, it is obviously quite impossible for plaintiff to prove that they were spent for necessaries. In any event  and quite apart from Mr. Walsh's obligation, even in the absence of express agreement, to be bound for his family's necessaries  he could not bound by Mrs. Walsh's signature in the absence of notice.
In denying the defense of usury, plaintiff asserts that N.J.S.A. 17:16C-41 controls the rate of charges on its time price differential under retail installment sales. Not *64 so. This statute refers only to contracts for the sale of goods, which are defined in N.J.S.A. 17:16C-1 as "All chattels personal having a cash price of $7,500.00 or less, but not including money or choses in action or goods sold for commercial or business use." Defendant here received no goods or chattels, but only coupons or "scrip" intended to be used as money. Therefore, this transaction was governed by N.J.S.A. 31:1-1, the general usury statute, which established a maximum interest rate of 6%. The rate charged here is therefore usurious.
The usual charge account arrangement contemplates time payments beginning after goods and chattels have been purchased. Even if it were conceded that N.J.S.A. 17:16C-41 applied in the present case, the interest charged would be usurious unless the coupons were spent the same day they were received, since the contract provided for interest to start immediately. Even one day's delay would reduce the borrowing period below the computed installment payment term.
Paley v. Barton Savings & Loan Assoc., 82 N.J. Super. 75 (App. Div. 1964) certification denied 41 N.J. 602 (1964) 198 A.2d 446 (cited by plaintiff) is inapposite. The suit there sought to recover certain monies which had already been paid. The transaction was not a loan (nor a sale) but a fully performed agreement to buy mortgages. Thus the fee of 1% of the value of the mortgages to be purchased was a proper charge and not an usurious exaction.
Plaintiff contends that, even if the transaction is found to be usurious, it is still entitled to a judgment for the amount of the claim without interest. Again not so. Defendant pleads failure of consideration and fraud.
What did Mrs. Walsh receive for her alleged agreement to pay $246.01 over 24 months? A book of coupons entitling her to purchase $200.00 worth of goods from the plaintiff on credit. If the coupons were lost, stolen, destroyed, or detached from the book prior to use, she still had to complete payments, and plaintiff would be the richer by the *65 amount of the loss without having supplied anything in return. Actually, all that plaintiff has done for defendant is to agree to sell her goods on credit at some time in the future.
Mrs. Walsh understood that she was applying for the usual type of charge account upon which there would be no payment until she made a credit purchase, and that she would then pay a maximum of $10.00 per month. Mrs. Scott told her "It's like a charge account" and "You only have to pay for what you buy." These statements were clearly untrue and were relied upon by Mrs. Walsh. Mrs. Scott testified that she had a "spiel" to sell the "scrip", and the entire presentation was obviously cleverly designed to obscure the real nature of the transaction. These untruths and half-truths constituted fraud.
It is clear that the contract entered into was based on mutual mistake, even if all the evidence is interpreted most favorably to the plaintiff. Mrs. Walsh thought she had arranged a normal credit plan, and plaintiff's agent supplied her with a coupon account.
Plaintiff's attorney, in his oral argument, also pleaded that defendants would be unjustly enriched by a decision adverse to his client in that they might still have the coupons or might have spent them. Unfortunately, plaintiff will never know whether the coupons are spent, and will never be able to prove unjust enrichment, unless it establishes a clearing operation to check the coupons. Its greed has carried it beyond the bounds of an unconscionable agreement to a point where its desire to even economize on clerical expense thwarts its own proofs.
It is difficult to imagine a more one-sided scheme for the enrichment of a commercial establishment at the expense of a potential customer. Mrs. Scott testified that the plaintiff preferred the coupon plan  for obvious reasons. Christmas Clubs are criticized because no interest is paid on the participants' savings. This coupon plan not only pays no interest on money advanced but even charges the potential customer interest on his account before he makes any purchases. *66 And the store has the additional happy chance of realizing the full value of the coupons if they are stolen, lost, destroyed or detached before being used. The Court is of the opinion that this plan is, in addition to its other faults, against public policy.
There will be a judgment for the defendants on the plaintiff's suit, with costs.