**Delilah MILLER, et al., Respondents,**

v.

**COLORTYME, INC., et al., Appellants.**

**No. C2–92–2595.**

Court of Appeals of Minnesota.

Aug. 3, 1993.

Review Granted Sept. 10, 1993.

Seymour J. Mansfield, Richard J. Fuller, Mansfield & Tanick, P.A., Mark N. Stageberg, Joel Lavintman, Lommen, Nelson, Cole & Stageberg, P.A., David L. Ramp, Law Offices of the Legal Aid Society of Minneapolis, Minneapolis, William Crowder, Susan Bedor, Crowder & Bedor, St. Paul, for amicus curiae Mary Weber.

Sue Halverson, Jay M. Quam, Fredrickson & Byron, P.A., Minneapolis, for appellants Colortyme, Inc., et al.

James E. Rolshouse, Minneapolis, for amicus curiae Minnesota Ass'n of Rental Dealers.

Considered and decided by HUSPENI, P.J., and HARTEN and HOLTAN *, JJ.

## OPINION

HARVEY A. HOLTAN, Judge.

Appellants challenge a grant of partial summary judgment that their rent-to-own contracts constitute consumer credit sales for all purposes under the Consumer Credit Sales Act and that their contracts are usurious as a matter of law. We reverse.

## FACTS

Appellant D.E.F. Investments, Inc. and its subsidiaries operate four rent-to-own dealerships of new and used furniture and appliances in Minnesota. Under appellants' contracts, customers elect to rent consumer items for a term, ranging from one week to one month. At the end of that term, the customer may either return the item or renew the agreement for an additional term. Full payment must be made before or at the beginning of each term.

If the customer renews the agreement for a specified, predetermined number of terms, he obtains title to the property. The number of terms entitling the customer to ownership ranges from 12 to 36 months. Any time after the first lease payment, the customer may obtain ownership by prepaying 55% of the remaining payments.[1]

On October 17, 1990, respondent Craig Stenzel entered an agreement with appellants to rent-to-own a consumer item manufactured by Zenith. The agreement lists the fair market value as $470. It also explains that in order to own the property, the customer must either make 18 monthly payments of $47.70 for a total of $858.60 or 78 weekly payments of $12.75 for a total of $994.50. Although Stenzel elected to make bimonthly payments, no such rate is discussed. The agreement also states:

> If you renew this lease for the number of terms necessary to acquire ownership the cost of lease services will be $388.60.

On April 7, 1992, respondents Stenzel and Delilah Miller, another customer with a similar contract, filed a class action suit against appellants, seeking declaratory, monetary, and injunctive relief. The relevant counts in the seven-count complaint are respondents' claim that these rent-to-own transactions constitute consumer credit sales for all purposes under Minn.Stat. §§ 325G.15–.16 (1992) and respondents' claim that the contracts are usurious. On August 3, 1992, respondents moved for partial summary judgment, asking for a declaratory judgment that appellants' contracts constitute credit sales.

On August 5, 1992, appellants moved for partial summary judgment, seeking dismissal of the usury claim. Respondents argued for partial summary judgment in their favor on this claim since, in their view, the transactions constitute consumer credit sales, thereby forcibly involving the extension of credit.

On November 30, 1992, the district court filed an order declaring contracts entered by "Class One"[2] as "consumer credit sales

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. Agreements made prior to enactment of Minn. Stat. § 325F.93 (1992) (1990 Minn. Laws ch. 527, § 10) do not state the early purchase option in these terms. Under the earlier contracts, customers had the option after the first rental period of buying the property at "the current cash selling price" quoted by appellants.

2. The November 30 order also grants respondents' motion for class certification as to Class

for all purposes within the meaning of Minn.Stat. §§ 325G.15 and 325G.16." The court also granted summary judgment for respondents on the usury claim, reserving measure of the damages for the fact finder.

On January 21, 1993, this court granted discretionary review of the district court's order for partial summary judgment. On May 4, 1993, we denied respondents' motion to file an additional brief in response to appellants' reply brief and to strike portions of appellants' reply brief, and we stated matters outside the record on appeal would be disregarded by this court.

### ISSUES

I. Did the district court err in ruling that appellants' rent-to-own contracts constitute credit sales for all purposes under the Consumer Credit Sales Act?

II. Did the district court err in ruling that appellants' rent-to-own contracts are usurious as a matter of law?

### ANALYSIS

In reviewing an appeal from summary judgment, this court must examine the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *Offerdahl v. University of Minn.*, 426 N.W.2d 425, 427 (Minn.1988).

### I.

■ Appellants contest the district court's determination that their rent-to-own agreements constitute credit sales "for all purposes" within the meaning of the Consumer Credit Sales Act (CCSA), Minn.Stat. §§ 325G.15–.20 (1992). De novo review is appropriate when applying a statute to undisputed facts. *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn. 1992).

Under the CCSA's scheme, a lease of goods constitutes a "sale of goods" if:

(a) the * * * lessee has the option to renew the contract by making the payments specified in the contract;

(b) the contract obligates the * * * lessor to transfer ownership of the property to the * * * lessee for no other or a nominal consideration upon full compliance by the * * * lessee * * *; and

(c) the payments contracted for by the * * * lessee, including those payments pursuant to the exercise of an option by the * * * lessee to renew the contract, are substantially equivalent to or in excess of the aggregate value of the property and services involved.

Minn.Stat. § 325G.15, subd. 5.

A sale of goods, in turn, constitutes a "consumer credit sale" if:

(a) credit is granted by a seller who regularly engages as a seller in credit transactions of the same kind;

(b) the buyer is a natural person; and

(c) the goods or services are purchased primarily for a personal, family or household purpose.

Minn.Stat. § 325G.15, subd. 2.

Finally, section 325G.16, subdivision 4, provides:

Any lease or bailment of goods *which constitutes a consumer credit sale* shall be deemed to be *a sale for all purposes.*

(Emphasis added.)

In the instant case, appellants' contracts clearly constitute a "sale of goods" under section 325G.15, subdivision 5. However, these sales of goods do *not* constitute "consumer credit sales" within the meaning of section 325G.15, subdivision 2(a). That is, because customers prepay for use of the leased goods with no obligation to renew the lease, appellants are not sellers granting credit. We hold, therefore, that these transactions cannot be "deemed to be a sale for all purposes" under section 325G.16, subdivision 4.

One. Class One consists of individuals who entered rent-to-own contracts after April 7, 1986, that provide for ownership at the end of a predesignated term without requiring an additional balloon payment. Individuals in Class Two have entered contracts after April 7, 1986, requiring a balloon payment.

## II.

Appellants also challenge the district court's ruling that the rent-to-own contracts are usurious as a matter of law. Unless a particular exception applies, extensions of credit are usurious if more than six percent interest is charged. *See* Minn. Stat. § 334.01, subd. 1 (1992).

■ Appellants contend they are exempt from the usury statute under the time-price doctrine. Under this judicially-created doctrine:

The owner has the right to determine the price at which he will sell his property. He may fix one price for cash and another price for credit. The fact that the credit price exceeds the cash price by a greater percentage than is permitted by the usury law does not make the transaction usurious for the very plain reason that the transaction is a sale and not a loan.

*Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 231, 219 N.W.2d 641, 647 (1974) (quoting *Dunn v. Midland Loan Finance Corp.*, 206 Minn. 550, 553, 289 N.W. 411, 413 (1939)). Similarly, this court has held that time-price transactions are outside the scope of the usury statute because they represent

merely a sale of goods and not a loan of money, and there is no forbearance or loan because the debt is based on a future price and not on an amount then due.

*St. Paul Bank for Cooperatives v. Ohman*, 402 N.W.2d 235, 238 (Minn.App. 1987).

The time-price doctrine cannot apply in this case, however, since there is no cash price as opposed to a credit price.[3] Appellants do not offer consumer items either for immediate sale at fair market value or for sale by installments at a higher credit price. That is, no outright cash sales may occur. Customers exercising the prepayment option must first lease the property for at least one term and then pay 55% "of

the difference between the total of scheduled payments and the total amount paid on the account." Moreover, the Minnesota Supreme Court has cautioned against any expansion of the time-price doctrine. *See Rathbun*, 300 Minn. at 232–33, 219 N.W.2d at 648.

■ Respondents, on the other hand, appear to argue that since appellants' contracts constitute credit sales for all purposes, the various elements of usury are forcibly met. Respondents fail to recognize, however, that not all credit sales are usurious in nature. Even if we had determined that these transactions constitute consumer credit sales for all purposes under the CCSA, we could not hold these contracts to be usurious without establishing that the substantive elements of usury are met. The CCSA does not state that rent-to-own transactions are usurious, but merely that sometimes they constitute credit sales, which are implicitly subject to usury laws.

■ Given the absence of any statutory or judicial exceptions to the application of the usury statute here, we must determine whether the requirements are met. Minnesota courts will hold a transaction usurious if the following elements exist:

(a) A loan of money or *forbearance of a debt;*

(b) an agreement * * * that *the principal shall be repayable absolutely;*

(c) the exaction of a greater amount of interest or profit than is allowed by law; and

(d) the presence of an intention to evade the law at the inception of the transaction.

*Rathbun*, 300 Minn. at 230, 219 N.W.2d at 646 (emphasis added); *Citizen's Nat'l Bank v. Taylor*, 368 N.W.2d 913, 918 (Minn.1985).

The district court relied on *Rathbun* in reaching the conclusion that the requisite forbearance exists. In *Rathbun*, however,

---

**3.** Note that Minn.Stat. § 325F.84, subd. 3 (1992), defines cash price as fair market value. Here, although the "cash price" or market value is

listed on the contract, it is meaningless since customers have no option to purchase the item under those terms.

the court determined the transaction involved a loan of money, rather than a forbearance. *Rathbun,* 300 Minn. at 235, 219 N.W.2d at 649.

The district court also based its conclusion that forbearance exists in part on operation of statutory law. According to the court:

> The contracts are * * * credit sales for the purpose of applying the Minnesota usury statute. As sales where there is an extension of credit, the transactions also, by definition, involve a forbearance of debt. [Citing *Rathbun.* ] Hence, the contracts by their own construction and by operation of statutory law embody a "forbearance of debt."

As noted above, however, even if the CCSA applies to these transactions, the substantive elements of usury must be met.

Appellants' arguments as to why these transactions lack the requisite forbearance are compelling. They argue customers pay in advance

> for use of the goods during the rental term * * *. The customer has no obligation to pay anything further, i.e., there is no debt, and [appellants] simply ha[ve] nothing from which to forebear.
>
> \* \* \* \* \* \*
>
> By exercising [their] right to require return of the property at the end of a rental term, [appellants are] actually *enforcing* an obligation of the lessee, *not* refraining from enforcement of that obligation.

We hold, therefore, that the district court erred in ruling that the requisite forbearance exists.

The district court also relied on *Rathbun* in determining that the transactions at issue involve an absolute obligation to repay the principal. In *Rathbun,* the defendant W.T. Grant Company offered a credit coupon book plan. *Rathbun,* 300 Minn. at 225, 219 N.W.2d at 644. Under the plan, customers could purchase books of coupons "in denominations ranging from 50 cents to $10, and totaling from $10 to $200." *Id.* The books could be purchased for cash or on financing. *Id.* Coupons could be re-

turned at any time with no principal or finance charges due. *Id.* at 226, 219 N.W.2d at 644. The *Rathbun* court found that absolute repayment was required since the obligation to repay continues "[u]ntil the customer takes some positive action to return the coupons." *Id.* at 236, 219 N.W.2d at 650.

At first glance, *Rathbun* seems analogous to the instant case. Nonetheless, the cases are distinguishable because respondents here have paid *in advance* for use of the goods during the lease period. Thus, there is simply nothing to repay. Appellants' customers are only obligated to surrender the consumer items at the end of the prepaid term. Moreover, they are under no obligation to renew the lease for additional terms. Since respondents have prepaid for use of the goods, the district court erred in determining that respondents are under an absolute obligation to repay the principal. No principal has been extended.

Because of our disposition of these first two requirements, we need not address the other two.

### III.

We need not address whether or not the Rental Purchase Agreements Act (RPAA), Minn.Stat. §§ 325F.84–.98 (1992), supersedes the CCSA because of our holding that the contracts in question do not constitute consumer credit sales for all purposes. Nonetheless, because the RPAA purports to define and control the rent-to-own industry, its relationship to the CCSA needs clarification. We note that respondents agree that the contracts in question constitute rental purchase agreements within the meaning of the RPAA.

In 1981, the legislature amended the CCSA to include sections 325G.15, subdivision 5, and 325G.16, subdivisions 4 and 5. 1981 Minn. Laws ch. 10, §§ 1–3. These amendments added some types of terminable leases to its coverage. Then, in 1990, the legislature adopted the RPAA to regulate certain terminable leases. 1990 Minn. Laws ch. 527, §§ 1–15. The legislature

must have recognized that the RPAA and CCSA may apply to some of the same type of leases. Section 325F.85 of the RPAA provides that if the RPAA consumer protection provisions conflict with the CCSA provisions, sections 325F.84–.97 of the RPAA apply to a rental-purchase agreement and supersede sections 325G.15–.16. Thus, section 325F.85 makes it clear that the legislature intended to carve out a category of rental-purchase transactions previously regulated by the CCSA for special treatment and regulation under the RPAA. This leaves the CCSA to regulate other variations of rental purchase transactions.

The two acts conflict in some significant aspects. First, the RPAA requires "truth-in-renting" disclosures in advertising and in the documents creating the transaction. Minn.Stat. §§ 325F.86–.88. The CCSA does not mention advertising. Moreover, the RPAA requires disclosure that title passes only when all required charges have been paid in full. Minn.Stat. §§ 325F.86(e), 325F.88, subd. 2(a)(3). The CCSA, on the other hand, declares that the interest retained by the lessor shall be a security interest only. Minn.Stat. § 325G.16, subd. 4.[4]

The RPAA also requires disclosure that the property is either new or used but can disclose the property as used if it is in fact new. Minn.Stat. § 325F.86(i). Under the CCSA, a disclosure that the property is either new or used is mandatory. Minn. Stat. § 325G.16, subd. 5.

More important, the CCSA allows "earnings" to be generated from the transactions by means of interest (and other allowable charges) which are regulated by the usury statutes. The RPAA, on the other hand, allows "earnings" from these transactions by way of "cost of lease services" (and other charges). Minn.Stat. § 325F.86(c). These costs can be minimally controlled through the Commissioner of Commerce's regulation of the "cash price" which affects the computation of the "cost of services." Minn.Stat. §§ 325F.91, subd. 2, 325F.84, subd. 3. The RPAA neither mentions nor suggests that this is an inter-est-generating transaction. Except for the limited action of the Commissioner of Commerce, the RPAA does not regulate the content or amount of the "cost of lease services."

Respondents claim the cost of lease services represents a combination of both lawful charges *and interest*. The district court concluded as a matter of law the amount of these costs were so great that lawful changes would not account for the difference and that the balance—constituting interest—was in an unknown amount but as a matter of law exceeded the rate permitted under the usury statute.

We note that the cost of lease services includes more than out-of-pocket expenses and may be likened to the difference between the cash price and the installment price in a time-price transaction. This difference reflects such factors affecting the seller as compensation for risk, overhead, and return on investment. *Schauman v. Solmica Midwest Inc.*, 283 Minn. 437, 440, 168 N.W.2d 667, 670 (1969).

The content and amount of regulated earnings generated by these transactions under the CCSA is in substantial conflict with the unregulated earnings under the RPAA. The legislature could not have intended to provide rental-purchase lessors the benefits of lawful commerce under the RPAA, and its virtually unregulated "cost of lease services," only to subject them to the penalties of usury under the CCSA.

In short, the conflicts are clear and substantial, thereby requiring the application of section 325F.85.

## DECISION

Because appellants' customers prepay for use of the leased consumer goods, appellants' contracts do not constitute consumer credit sales for all purposes under Minn.Stat. §§ 325G.15–.16. Because the elements of forbearance and absolute repayment are not met, we also reverse the

**4.** Minn.Stat. § 336.1–201(37) (1992) is not appli-   cable.

district court's ruling that appellants' contracts are usurious as a matter of law.

**Reversed.**