### BRUCE E. DUNN v. MIDLAND LOAN FINANCE CORPORATION AND ANOTHER.[1]

December 29, 1939.

No. 32,223.

[1]Reported in 289 N. W. 411.

*Jacob Garon,* for appellant.
*Leonard, Street & Deinard,* for respondents.

PETERSON, JUSTICE.

This action is brought to secure the possession of an automobile, and to cancel as usurious the conditional sales contract under which plaintiff purchased the car, which has been assigned to defendant. The pleadings show that on December 24, 1938, plaintiff purchased the car under conditional sales contract from Alvin Motors, Inc., herein referred to as the dealer. The contract was assigned to defendant, an automobile finance company, which seized the car on January 23, 1939, because of plaintiff's default, and retains possession of it under the provisions of the contract.

On December 23, 1938, the day before the contract was signed, plaintiff went to the dealer's place of business "to buy an automobile" and "to see what kind of a deal" he could make. He then had a car, held by the sheriff under a levy of execution for $57.37, which he wanted to trade in on the car he intended to purchase.

Plaintiff and the dealer then made a deal, which it was understood was tentative depending on whether or not financing arrangements could be made, under which plaintiff was to trade in his car at $75 and pay $10 in cash on January 2, 1939, and 36 semimonthly payments thereafter of $9.56. The terms were written on a sales order, which plaintiff signed, but the dealer did not. The order by its terms was not to be effective until signed by the dealer. Plaintiff also signed a credit slip, which contained information concerning him as a credit risk.

On December 24, 1938, plaintiff returned to resume the negotiations. Meanwhile, the dealer had contacted five automobile finance companies with a view to disposing of a contract with plaintiff embodying the terms tentatively agreed upon. All the finance companies refused to take the contract. Defendant was contacted. It refused to buy the contract as proposed, but indicated that it would buy it, if the semimonthly payments were made $11 instead of $9.56, thereby increasing the amount to be paid by plaintiff $51.84. The dealer advised plaintiff of these facts. They agreed to revise the tentative terms and entered into the conditional sales contract involved here, which embodied all the terms of the tentative agreement, except that the semimonthly payments were to be $11 instead of $9.56. Plaintiff testified that he needed the car which he purchased, did not want to lose what he had in the car which he traded in, thought he could make the payments, and decided to go ahead. The financial arrangement, either in its inception or afterwards, was not referred to in the evidence even once as a loan.

After the conditional sales contract was completed the dealer sold it to defendant and received therefor $265 in cash, $12 in credit, and $10.97 in payment of an insurance premium. The uncontradicted testimony was that defendant had discontinued making loans about six months prior to that time and confined its business to outright purchases of contracts.

Plaintiff made no payments under the contract, defendant took possession of the car, and on January 31, 1939, five weeks after the contract was signed, plaintiff commenced this action. He con-

tends that there was an increase of the credit sale price over the "cash" sale price and that such increase was usurious. The evidence does not show that any cash sale price was agreed upon, although the complaint alleges it was $350. Plaintiff refers to the tentative price as a cash price, but in this he errs for the reason that it was a credit price. What we have really is an increase of one credit price by another credit price—of the tentative by the actual credit sale price. But, since the parties treat the tentative price as a cash price and we do not see that it makes any difference, we shall do so for purposes of decision. It was argued that, because the defendant indicated to the dealer the terms at which it would buy the contract, it thereby participated in the transaction in such a way as really to loan its money under the guise and form of a conditional sales contract between the dealer and plaintiff and assignment thereof to it. Plaintiff also contended that the dealer was in fact defendant's agent to place such loans.

There are findings of fact that the transaction between the dealer and plaintiff was a sale of the automobile under conditional sales contract and that the dealer "sold" the contract to defendant, from which conclusions were made that the transaction was not a loan of money to plaintiff by defendant and that it did not involve any usury. Judgment was rendered for defendant, and plaintiff appeals.

■ Whether a particular transaction is usurious is a fact question, where the evidence is conflicting. Decision is not to be made according to any hard and fast test. The case is not to be determined simply by what the parties represent the transaction to be, but by considering the whole evidence to ascertain whether or not it is in substance a contracting to receive usurious interest for a loan or forbearance of money. The process involves looking through the form to the substance. No device or shift may be employed to conceal the true character of the transaction. Chase v. New York Mtg. Loan Co. 49 Minn. 111, 51 N. W. 816.

There can be no usury unless the transaction involves a loan or forbearance of money. Bangs v. Midland Loan & Finance Co.

200 Minn. 310, 274 N. W. 184. A sale of personal property is not a loan or forbearance of money and is not within the usury law unless the sale is a mere form or device to evade the usury law. Trauernicht v. Kingston, 156 Minn. 442, 195 N. W. 278. The increase of the credit price for the purposes of the conditional sales contract does not convert what otherwise would be a sale into a loan. The owner has the right to determine the price at which he will sell his property. He may fix one price for cash and another price for credit. The fact that the credit price exceeds the cash price by a greater percentage than is permitted by the usury law does not make the transaction usurious for the very plain reason that the transaction is a sale and not a loan. Anno. 48 A. L. R. 1442, and 57 A. L. R. 880; 66 C. J. p. 183, § 76; 27 R. C. L. p. 214, § 15; 21 Minn. L. Rev. p. 585 at pp. 588-589. The rule stated is in harmony with our decisions. Barry v. Paranto, 97 Minn. 265, 106 N. W. 911, 7 Ann. Cas. 984; Banning v. Hall, 70 Minn. 89, 72 N. W. 817; 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 9981. In Saxe v. Womack, 64 Minn. 162, 66 N. W. 269, defendants in order to obtain a loan from plaintiff purchased lots at a price in excess of their value and claimed that such increase in the price in itself rendered the loan usurious. We held that the issue was one of fact on all the evidence and said [64 Minn. 164]:

"In this case the burden rested, as it does in all cases of this character, upon the party asserting the transaction to have been usurious, to show it. It is not a necessary inference from the fact that plaintiff compelled defendants to purchase his property, or because his price was greater than the actual market value. Whether the purchase of property, in connection with a loan, as a part of the consideration and an inducement therefor, is in fact a cover for usury, must ordinarily be determined as a question of fact."

The power to determine the extent of the increase of the credit over the cash selling price is incident to the owner's right to fix the latter and is a matter of contract between the parties.

Courts have observed that in calculating the addition to the cash price the owner may consider all factors which influence vendors, such as profit, return on investment, overhead, handling charges, risks involved, insurance, sale discount of contract for deferred payments, and perhaps other items. In re Bibbey (D. C.) 9 F. (2d) 944; Gilbert v. Hudgens, 92 Col. 571, 22 P. (2d) 858; Conway v. Skidmore, 48 Wyo. 73, 41 P. (2d) 1049. In Ricker v. Fay Securities Co. 110 Cal. App. 750, 753, 294 P. 732, 733, the court said: "Other considerations than interest are properly involved, such as the risk incident to financing the contract, expenses connected therewith, etc." See 35 Col. L. Rev. 1322.

This type of transaction is not to be confused with that where the parties definitely agree upon a binding sale price, payable in whole or in part by deferred payments for the reason that such a contract creates a debt for the unpaid purchase price, or part thereof, and the granting of time to pay is a forbearance to collect such existing debt; which it is conceded everywhere is subject to the usury law. 66 C. J. p. 184, § 76; 27 R. C. L. p. 215, § 15. Decision here is predicated on the absence of a contract binding the dealer to sell at the so-called cash price.

■ The conditional sales contract involved here was a legitimate subject of commerce and could be bought and sold as freely as other property. The sale of an existing chose in action at a discount is not a loan and hence is not subject to the usury law. Francis v. Christensen, 175 Minn. 468, 221 N. W. 720 (purchase of contract for deed of real estate); State Bank of Northfield v. N. W. Security Co. 159 Minn. 508, 199 N. W. 240 (assignment of promissory note); Lake Street S. & D. Co. v. Verin, 169 Minn. 332, 211 N. W. 161 (discount of a promissory note); Pleason Realty & Inv. Co. v. Kleinman, 165 Minn. 342, 206 N. W. 645 (sale of real estate mortgage); Jackson v. Travis, 42 Minn. 438, 44 N. W. 316 (id.).

The sale of the contract to defendant does not require any inference that the contract itself or the assignment was a loan, or something other than what they purport it to be.

■ The fact that defendant indicated to the dealer the terms on which it would buy the contract between plaintiff and the dealer does not show that the transaction was a loan. The decisions have gone further than we are required to do here. A finance company is not regarded as loaning money to a dealer's customer simply because it furnishes the dealer with schedules of discounts, forms of contract, assignment, and other instruments to be executed, and solicits the purchase of such paper from the dealer. Commercial Credit Co. v. Tarwater, 215 Ala. 123, 110 So. 39, 48 A. L. R. 1437; General Motors Acceptance Corp. v. Swain (La. App.) 176 So. 636. That the purchaser made proposals of discounts, either by schedule generally or by specific proposal in the particular case, is some evidence that a transaction at the proposed terms was a sale and not a loan. The only difference is that intention is shown by the schedule as to cases generally and by the specific proposal as to the particular case.

Plaintiff relies on Ryan v. Indiana Loan & Finance Corp. 91 Ind. App. 622, 171 N. E. 812, 172 N. E. 550, as holding to the contrary. The purpose of the transaction in that case was to obtain a loan for the vendee to pay the balance of the purchase price due to the vendor. By arrangement of the parties concerned, title to the car was caused to be put in the lender's name. The lender required both the vendor and vendee to sign the note, by the terms of which the vendee was to become the owner of the car upon payment of the loan. The money loaned was paid to the vendor. The transaction on its face was a pretended sale to conceal a loan. The case is somewhat like Adjustment Service Bureau, Inc. v. Buelow, 196 Minn. 563, 265 N. W. 659, so far as the vendor's signing the note of the vendee to obtain payment of the debt due to him from the latter.

■ There was no proof that the dealer was defendant's agent. Plaintiff contends that agency may be inferred from a course of dealing in which defendant purchased numerous conditional sale contracts such as the one involved here. A course of dealing does not change the nature of the transaction. Successive purchases by an automobile finance company of paper from an automobile

dealer do not require an inference that their relationship is that of principal and agent where the transactions between them show the relationship to be that of vendor and vendee. Mayer v. American Finance Corp. 172 Okl. 419, 45 P. (2d) 497.

Our conclusion is that the findings are sustained by the evidence. There was an actual sale of an automobile by the dealer to plaintiff under conditional sales contract. The parties agreed to finance the deal by a sale of the contract to defendant. Intention to make a loan was not expressly shown, and, if it is to be found, it must be by inference. Acts relied on as requiring such an inference are consistent with the transaction shown by the evidence. The inference, which plaintiff asks us to make as a matter of law to overturn the decision below, is not permissible.

Affirmed.

