GILBERT SCHAUMAN AND ANOTHER v.
SOLMICA MIDWEST INC. AND ANOTHER.

168 N. W. (2d) 667.

May 29, 1969—No. 41282.

*Carl A. Jensen,* for appellants.

*S. Harry Gainsley* and *Gainsley & Gainsley,* for respondent.

Heard before Knutson, C. J., and Nelson, Sheran, Peterson, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

This appeal involves the question of whether a contract between plaintiffs, Gilbert Schauman and Janette Schauman, husband and wife, and defendant Solmica Midwest Inc. was usurious.

It appears that on October 27, 1966, plaintiffs entered into a "CONTRACT AND GUARANTEE" with defendant Solmica for the application of aluminum siding on a home owned by plaintiffs. The contract provided that the cash price for the work was $3,200 and the credit price therefor was $4,879.56, payable in 84 monthly installments of $58.09 each, commencing January 25, 1967. Title to the materials was to remain in Solmica until the price was paid in full. As security for a note signed by plaintiffs in the amount of $4,879.56, payable in the foregoing monthly installments, plaintiffs signed a real estate mortgage covering their home. The mortgage was filed in the office of the register of deeds, Brown County, on November 22, 1966. On November 21, 1966, for a valuable consideration defendant Mortgage Associates, Inc., purchased from defendant Solmica the note and mortgage. Plaintiffs, upon being advised of this, made the payments on the note to Mortgage Associates.

In this action plaintiffs sought cancellation of the note and mortgage and the return of all payments they had made. At the close of the testimony the trial court granted defendants' motion for judgment of dismissal with prejudice. Plaintiffs on this appeal do not challenge the finding of the trial court that Mortgage Associates was a holder in due course of the note, but contend that their contract with Solmica was usurious, relying on Minn. St. 334.01, which provides in part that "no person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum, or any greater value, for the loan or forbearance of money, goods, or things in action, than $8 on $100 for one year * * *," and on § 334.30, which provides that "[a]ll * * * contracts * * * whereby there shall be reserved, secured, or taken any greater sum or value for the loan or forbearance of any money, goods, or things in action than hereinbefore prescribed, * * * shall be void * * *."

■ Plaintiffs fail to recognize that in the case at bar we are dealing with a transaction constituting a sale of property and not a loan of money or a forbearance of a debt. Usury is generally defined as taking or receiving more interest or profit on a loan than the law permits. In order to conclude that a transaction is void for usury within this definition, the court must find that it involves (a) a loan of money or forbearance of a debt; (b) an agreement between the parties that the principal shall be payable absolutely; (c) the exaction of a greater amount of interest or profit than is allowed by law; and (d) the presence of an intention to evade the law at the inception of the transaction. Note, 21 Minn. L. Rev. 585.

It is well settled that a vendor may have one price for cash and another when extending credit, and the mere fact that the credit price exceeds the cash price by a greater percentage than is permitted by the usury laws does not make the contract usurious. A contract has been held to be usurious where the property was sold on a cash basis and an illegal rate of interest was charged on deferred payments. 10 Minn. L. Rev. 550. We have no such situation in the instant case.

The courts have made no distinction between conditional sales and

outright sales on credit in determining whether or not they were usurious. In a number of cases where the finance company did not deal directly with the purchaser, and where there was no prior agreement to sell at the cash price, the courts have held the transaction not usurious regardless of the fact that the installment price was ascertained by reference to the discount rates of the finance company or that the purchaser's payments were conditionally guaranteed by the dealer. 24 Minn. L. Rev. 602.

■ This court in Dunn v. Midland Loan Finance Corp. 206 Minn. 550, 289 N. W. 411, 24 Minn. L. Rev. 602, said that the power to determine the extent of the increase of the credit price over the cash selling price is incident to the owner's right to fix the latter and is a matter of contract between the parties. Courts have observed that in calculating the addition to the cash price the owner may consider all factors which influence vendors, such as profit, return on investment, overhead, handling charges, risks involved, insurance, sale discount of contract for deferred payments, and perhaps other items. Thus, other considerations than interest are properly involved in the credit price, such as risk incident to financing the contract, expenses connected therewith, etc.

■ Plaintiff Gilbert Schauman testified that Solmica's representative had said that under the credit-time price plaintiffs would have to pay only 5 to 6 percent more. There is no explanation as to whether this remark referred to interest only or whether it included the many other items that would go into the credit-sale price. The testimony of Schauman on cross-examination indicates that he understood that the transaction was a sale on credit and that the seller made use of a mortgage finance institution, namely, Mortgage Associates. Mortgage Associates had no interest in plaintiffs; defendant Solmica had no interest in Mortgage Associates. Plaintiffs made payments under the note to Mortgage Associates and never to the seller. Schauman testified:

"Q.   Now, let me see if I understand your testimony, Mr. Schauman. When you signed the contract calling for the improvements to be made on your home, you knew that if you were going to pay for

this work over a period of seven years, you were going to pay more than $3200.00, you knew that?

"A. Five to six percent more.

"Q. But it is your testimony that you were told that the amount in excess of that $3200.00 would be something around five or six per cent, is that your testimony?

"A. That's correct.

"Q. Now, I take it from your testimony, too, that you at no time made an application for a loan from Mortgage Associates?

"A. No, I didn't take no loan.

"Q. You had no contact with Mortgage Associates at the time you contracted to have the work done on your place?

"A. No.

"Q. The first time that you heard from the Mortgage Associates was when they sent you these booklet of payment tickets?

"A. Yes, and I wasn't aware that they were from there."

On October 27, 1966, when plaintiffs signed their contract with Solmica, they also signed the note now claimed to be usurious and a credit statement wherein the total time balance was stated as "(Amount of Note) $4879.56" and the number of months as 84. Schauman signed a completion certificate November 18, 1966, wherein he states, "I (We) hereby certify that all articles and materials have been furnished and installed and the work satisfactorily completed on premises indicated in my (our) Credit Application." Plaintiffs also executed the real estate mortgage on November 18, 1966, as security for the note of $4,879.56.

Maynard Groshek, Twin City credit manager of the credit financing division of Mortgage Associates, testified as follows during cross-examination by plaintiffs' counsel:

"Q. Well, now, Mr. Groshek, you say that you paid $3200.00 for that note, is that correct?

"A. Yes, sir.

"Q. And the note is for $4,879.00. How do you arrive at the amount that you would pay for that note?

\* \* \* \* \*

"A. Well, I arrive at it because we know that we need to operate seven-and-a-half per cent head on—the time price differential.

"Q. You speak of seven-and-a-half per cent add-on interest now?

"A. I did not say interest.

"Q. Well, you said—

"A. I said time price differential.

"Q. You say seven-and-a-half per cent add-on time price differential?

"A. Right.

"Q. If you converted this to simple interest, what would that mean?

\* \* \* \* \*

"A. If we were talking simple interest? I would say approximately between 13.5 and 13.9 simple. Somewhere in there. I don't know exactly.

"Q. And this is the amount of interest that you would have received on your money, is that correct?

"MR. GAINSLEY [defendants' counsel]: That's objected to.

"THE COURT: I believe it's a misstatement of the witness's statement, Mr. Jensen.

\* \* \* \* \*

"BY MR. JENSEN:

"Q. But your return on this $3200.00 that you pay out, if you convert this to a simple interest return, then the return to your company would be about 13 1/2 per cent interest based on calculating it at simple annual interest rates?

"A. Yes.

"MR. GAINSLEY: Now, counsel, are you talking about gross return without taking into account costs of money?

"MR. JENSEN: Yes.

"MR. GAINSLEY: Costs of loss?

"MR. JENSEN: Yes.

"MR. GAINSLEY: Costs of operating an office?

"MR. JENSEN: I am just talking about the gross simple annual interest.

"MR. GAINSLEY:    Answer the question.
"BY MR. JENSEN:
    "Q.    Did you answer 'yes'?
    "A.    Yes."

What was attempted by plaintiffs' counsel in this cross-examination does not prove that their contract with Solmica was usurious. The general rule is as follows:

"If the negotiations between seller and buyer involve a bona fide quotation of both a cash price and a credit price, the transaction does not involve usury, even though the quoted credit price is such as to exceed the cash price plus lawful interest thereon." Annotation, 14 A. L. R. (3d) 1065, 1077.

Thus, a bona fide sale of property on credit at a price which exceeds the cash price by more than the legal rate of interest does not constitute usury, since the seller can fix one price for cash and another for credit. See, Daniel v. First Nat. Bank (5 Cir.) 227 F. (2d) 353; In re Bibbey (D. Minn.) 9 F. (2d) 944.[1]

Minnesota cases cited in Annotation, 14 A. L. R. (3d) 1065, 1079, as following the above rule are Dunn v. Midland Loan Finance Corp. *supra*; Midland Loan Finance Co. v. Lorentz, 209 Minn. 278, 296 N. W. 911; Seebold v. Eustermann, 216 Minn. 566, 13 N. W. (2d) 739, 152 A. L. R. 585; Van Asperen v. Darling Olds, Inc. 254 Minn. 62, 93 N. W. (2d) 690.

It may thus be said, applying the foregoing rule, that a seller may set two alternative prices for a commodity, a "cash price" and a "time price" with payments of the latter to be made over a period of

---

[1] Annotation, 14 A. L. R. (3d) 1065, 1077, note 16, contains the following statement: "It may be noted that the circumstance that the differential between the cash price and the credit price exceeds the amount of maximum lawful interest on a loan in the amount of the cash price for the period of credit extended is not always expressly spelled out in the cases. Since most of the rulings proceed on the theory that a sale is neither a 'loan' or a 'forbearance,' and usury cannot exist in the absence of both a loan and a forbearance, the element that more than lawful interest is involved in the time-price differential is obviously immaterial."

time, and the difference in amount between the two prices is not to be considered "interest" for the purposes of the usury laws. See, United States v. Commercial Credit Corp. (5 Cir.) 242 F. (2d) 57. The reason most frequently given for the conclusion that an advance in price for a credit sale over the price demanded for a cash sale does not constitute usury is that in the situation postulated there is no loan or forbearance of money. In re Bibbey, *supra.*

■ Dunn v. Midland Loan Finance Corp. 206 Minn. 550, 289 N. W. 411, 412, laid down the following rules:

"The sale of an existing conditional sales contract at a discount is not a loan and hence is not subject to the usury law.

"Indication by a finance company to an automobile dealer of terms on which it will buy a proposed conditional sales contract does not convert the conditional sales contract between the dealer and his customer and the subsequent sale of the contract to the finance company into a loan by it to the dealer's customer.

"Successive purchases by an automobile finance company of paper from an automobile dealer do not require an inference that their relationship is that of principal and agent where the transactions between them show the relationship to be that of vendor and vendee."

As was pointed out in the Dunn case, the type of transaction involved in the case at bar is not to be confused with that where the parties definitely agree upon a binding sale price, payable in whole or in part by deferred payments, for the reason that such a contract creates a debt for the unpaid purchase price, or part thereof, and the granting of time to pay is a forbearance to collect such existing debt, which it is conceded everywhere is subject to the usury law.

Clearly, as in Dunn, decision in the case at bar is predicated on the absence of a contract binding the seller to sell at the so-called cash price. As stated in the Dunn case, the conditional sales contract involved in the case at bar was a legitimate subject of commerce and could be bought and sold as freely as other property. The sale of an existing chose in action at a discount is not a loan and hence is not subject to the usury law. We have applied the rule established in the

Dunn case in Midland Loan Finance Co. v. Lorentz, *supra;* Seebold v. Eustermann, *supra;* Van Asperen v. Darling Olds, Inc. *supra;* and in the recent case of Walter E. Heller & Co. v. Warner, 282 Minn. 171, 163 N. W. (2d) 573, 574, where this court held:

"Delay in the signing of a conditional sales contract until after the buyer has signed a note for the same amount does not make the contract merely a device to avoid the usury laws where the delay occurred as a convenience to the buyer, there being nothing improper in a seller's requiring both a note and a conditional sales contract.

"The taking of a real estate mortgage is not inconsistent with retention of title under a conditional sales contract where the mortgage is not on the property sold under the contract. Kettwig v. Aero Investment Co. 191 Minn. 500, 254 N. W. 629, distinguished.

"To constitute a loan or forbearance of money, a sale of personal property must be a mere form or device to evade the usury laws.

"A bona fide sale of goods under a contract providing for a credit price in excess of the cash sale price is not subject to the usury laws of this state, and the presence of a prearranged plan to assign the sales contract does not alter this rule."

■ We think it clear from the record herein that plaintiffs have utterly failed to establish a cause of action. A sale was made pursuant to a price differential. There was no loan, nor forbearance, nor unlawful conduct on the part of defendant seller which would bring it within the usury statute. There has been no charge of fraud or misrepresentation by plaintiffs against the defendants. The decision of the trial court must be affirmed.

Affirmed.