**ST. PAUL BANK FOR COOPERATIVES,**
Respondent,

v.

**Herman OHMAN, Appellant.**

No. C2–86–1681.

Court of Appeals of Minnesota.

March 17, 1987.

Lauren R. Lonergan, Robert A. Brunig, O'Connor & Hannan, Minneapolis, for respondent.

William L. Lucas, Asa E. Butterick, Edina, for appellant.

Heard, considered and decided by SEDGWICK, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

This appeal involves a contract for the sale of farm equipment between appellant Herman Ohman and Minnesota Valley Breeders Association. The contract was assigned to respondent St. Paul Bank for Cooperatives. Appellant made no payments on the contract and respondent brought this action to recover. Appellant asserted defenses of fraud and usury. Both parties moved for summary judgment and the trial court granted summary judgment for the bank. We reverse.

## FACTS

Herman Ohman is a farmer. He states that in February or March 1982 he permitted Minnesota Valley Breeders Association (MVBA) to store a repossessed Harvestore silo on his property. MVBA offered to sell him the equipment with no specific payment date, but he declined the offer. MVBA permanently installed the Harvestore in July 1982. Ohman claims that it was installed without his permission.

On September 10, 1982, an MVBA representative came to the farm with a sales contract. The representative told Ohman that he would have to sign the contract because the equipment had already been installed. Ohman said he would sign only if MVBA would take the equipment back if he couldn't pay for it. The representative agreed and Ohman signed the contract.[1]

The contract, entitled "retail installment contract," recites:

The Seller has quoted the Buyer a cash price and a time price, and the Buyer elects to purchase the Harvestore equipment at the time price.

The total price set out in the contract was $120,376.20. Ohman paid $6,146 in downpayment. The total price was calculated by taking the cash price minus downpayment and adding a finance charge of 15.95 percent. The price was payable in equal installments beginning January 1, 1984. The contract stated that it would be assigned to the St. Paul Bank for Cooperatives. Ohman made no payments on the contract.

On December 16, 1982, MVBA assigned the contract to the bank as collateral for a loan that was equal to the cash price minus the downpayment stated in the contract. On April 19, 1985, the bank brought an action against Ohman for the total amount of the contract.

The bank moved for summary judgment in the sum of $81,474.92 (the cash price plus accrued finance charge). Ohman moved for summary judgment on his usury defense. The trial court granted summary judgment for the bank in the amount of $81,474.92 minus the amount realized by the bank upon resale of the equipment.

## ISSUE

Is the contract between Ohman and MVBA subject to Minnesota usury law?

## ANALYSIS

■■■ Minnesota follows the general rule that usury is the taking or receiving of more interest or profit on a loan or forbearance than the law allows. See Minn.Stat. § 334.01 (1982). To conclude that a transaction is usurious within the definition of the statute, the court must find (1) a loan of money or forbearance of debt; (2) an agreement between the parties that the principal shall be repayable absolutely; (3) the exaction of a greater amount of interest or profit than is allowed by law; and (4) the presence of an intention to evade the law at the inception of the transaction.

---

1. Ohman's claims for misrepresentation arise out of the transaction with MVBA. MVBA is not a party to this action. At the hearing on the summary judgment motions, Ohman apparently did not dispute that the bank was a holder in due course as to the misrepresentation defense and argued only the usury defense.

*Citizen's National Bank of Willmar v. Taylor*, 368 N.W.2d 913, 918 (Minn.1985).

The bank maintains that this contract is not subject to usury law because it comes within the time-price doctrine. The time-price doctrine was judicially created and is not an exception to usury law, but recognizes transactions which are outside the scope of usury law. It is based on the theory that the prohibition against usury is limited to (1) loans of money or personal property repayable in kind, and (2) forbearances to require payment on a loan or debt then due. A time-price transaction is outside this limitation because it is merely a sale of goods and not a loan of money, and there is no forbearance or loan because the debt is based on a future price and not on an amount then due.

*Dunn v. Midland Loan Finance Corp.*, 206 Minn. 550, 289 N.W. 411 (1939), established the time-price doctrine in Minnesota. That court stated:

> The owner has the right to determine the price at which he will sell his property. He may fix one price for cash and another price for credit. The fact that the credit price exceeds the cash price by a greater percentage than is permitted by the usury law does not make the transaction usurious for the very plain reason that the transaction is a sale and not a loan.

*Id.* at 554, 289 N.W. at 413. The *Dunn* court distinguished the time-price transaction from a deferred payment transaction:

> This type of transaction is not to be confused with that where the parties definitely agree upon a binding sale price, payable in whole or in part by deferred payments for the reason that such a contract *creates a debt for the unpaid purchase price,* or part thereof, and the granting of time to pay is a *forbearance* to collect such *existing debt,* which is

conceded everywhere is subject to the usury law.

*Id.* at 555, 289 N.W. at 414 (emphasis added). The distinction centers on whether there is in fact a "cash" price and a "time" price, or whether there is only a "cash" price which impermissibly charges an illegal rate of interest on the deferred payments. Finding that a transaction is within the time-price doctrine "is predicated on the absence of a contract binding the seller to sell at the so-called cash price." *Schauman v. Solmica Midwest, Inc.*, 283 Minn. 437, 444, 168 N.W.2d 667, 672 (1969).

The contract between Ohman and MVBA sets out a binding sale price payable in whole or in part by deferred payments. The contract then specifies a finance charge of 15.95 percent (fluctuating) or 18 percent if the payment is late. Although the contract recites that Ohman has elected to purchase the Harvestore for a "time" price, this language alone will not determine the nature of the transaction. The court is required to look beyond the words of the contract and determine if the actual agreement is usurious. *Seebold v. Eustermann*, 216 Minn. 566, 573, 13 N.W.2d 739, 744 (1944).

Under the applicable case law, this contract constitutes a forbearance [2] to pay a debt and not a valid time-price contract. First, the contract states that it creates an "indebtedness;" thus, the cash price was owing when the contract was signed and a debt did not arise each year when payment was due as in a time-price situation. Second, there is no evidence that the finance charge of 15.95 percent is based on any consideration (such as bookkeeping, billing, overhead or risk) other than interest. *See Schauman* at 440, 168 N.W.2d at 670. Third, there is not one price for cash and a separate price for credit, but only a cash price that could be paid at any time with accrued finance charge. The finance

**2.** A forbearance exists where there is a present debt payable initially at the cash price, or over time with an added finance charge. It "need not appear at the time of the creation of the contract nor need it exist simultaneously with the purchase of goods. It remains dormant during a period when the debtor may pay the obligation without finance charges and automatically comes into play when the finance charges are incurred." *Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 233–34, 219 N.W.2d 641, 648 (1974).

charge is a true interest charge; it is not a time-price differential. Fourth, MVBA computed the sales tax on the cash price, not the time price. There is, in reality, only one price, the cash price, to which a finance charge is added for forbearance to pay.

 The bank argues that the contract should not be considered usurious because it is similar to automobile installment sales and revolving credit plans, Minn.Stat. §§ 168.66 and 334.16. However, the legislature has enacted separate rules and rate limitations for automobile loans and revolving credit plans, and they are not subject to usury law. This contract is neither an automobile loan nor part of a revolving credit plan. Any inequity or inconsistency created by this distinction is for the legislature to resolve, not the court.

The four elements of usury are present: (1) there is a forbearance to pay a present debt; (2) the principal is repayable absolutely; (3) the 15.95 percent interest is greater than the 15 percent allowed at that time by Minn.Stat. § 334.011 for agricultural loans; and (4) the necessary intent is presumed. *See Citizen's National Bank* at 918–19. The statutory penalty [3] is the forfeiture of all accrued interest. Ohman is liable only for the principal amount of the debt. *Id.* at 920.

Finally, the bank argues this contract is controlled by Minn.Stat. § 334.06 and 12 U.S.C. § 2205. This analysis is incorrect because these statutes apply only to loans issued by banks, not to contracts assigned to the bank as collateral on its loans.

## DECISION

The installment sales contract between Ohman and MVBA does not fall within the time-price doctrine because Ohman did not have a choice of a cash price or a future

---

time price and the contract is subject to Minnesota usury law.

Reversed.

---

3. Minn Stat. § 334.011, subd. 2 (1982), establishes the remedy for a usurious agricultural loan or forbearance:

> If a greater rate of interest than that permitted by subdivision 1 is charged then the entire interest due on that note, bill or other evidence of debt is forfeited. If the greater rate of interest has been paid, the person who paid it may recover in a civil action an amount equal to twice the amount of interest paid.