```
                        ----------------
                          No. 95-3694
                        ---------------
```

Vickie Fogie, Joan Leonard, and          *
Angela Adams, on behalf of themselves    *
and all others similarly situated,              *
                                         *
        Plaintiffs/Appellees,            *
                                         *
v.                                       * Appeal from the United States
District Court
                                         * for the District of Minnesota.
THORN Americas, Inc. (formerly known     *
as Rent-A-Center, Inc.) a Kansas              *
corporation, and THORN EMI North    *
America Holdings, Inc., a Delaware        *
Corporation,                             *
                                         *
        Defendants/Appellants.           *

```
                        ---------------
                    Submitted: April 8, 1996

                         Filed: September 6, 1996
                        ---------------
```
Before McMILLIAN and FAGG, Circuit Judges and BURNS*, District Judge.
```
                        ---------------
```

BURNS, Senior District Judge.

Appellants THORN Americas, Inc. and THORN EMI North America Holdings, Inc. appeal the district court*s[1] order granting summary judgment for the plaintiff class and permanently enjoining appellants from entering into usurious "rent-to-own" consumer credit sales contracts. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). We affirm.

---

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

*The Honorable James M. Burns, Senior United States District Judge for the District of Oregon, sitting by designation.

## I.   BACKGROUND

Appellant THORN Americas, Inc. operates a chain of stores that offer a variety of household goods for sale or lease. Appellant THORN EMI North America Holdings, Inc. owns all of the stock of THORN Americas, Inc. Appellants operate their stores under the business name "Rent-A-Center" and are collectively called "RAC" in this opinion. Appellees are individual members of a certified class who entered into rent-to-own transactions with RAC on or after August 1, 1990.

RAC leases household goods to its customers for a weekly or monthly rental term. At the end of the initial weekly or monthly rental period, the customer may renew the agreement for another term. The lease may be renewed at the end of each rental term. Full payment of the rental fee is required at the beginning of each term.

RAC uses a standard form contract for each renewable lease agreement. RAC entered into thousands of such contracts with members of the plaintiff class. The renewable lease agreements between RAC and the members of the plaintiff class are known interchangeably as "the rental purchase contracts" or "the rent-to-own contracts".

The standard rental purchase contract allows a class member to acquire ownership of an item by renewing the lease for a specified number of consecutive rental periods. In the standard form contract, this method of acquiring title is called "renewing the agreement to ownership". Items may also be purchased for cash on an immediate sale basis.[2] However, the vast majority, if not all of RAC's business is conducted through rental purchase contracts.

The cash price of an item is set at 55% of the total payments necessary to purchase the item by renewing the agreement to ownership. The cash price of an item is prominently displayed on the item and is included in the standard form rental purchase contract. The difference between the total payments needed for renewal to ownership and the cash price is called the "cost of lease services".[3] The rental purchase contracts state the cost of lease services amount.

---

[2]The plaintiff class did not assert any claim against appellants based on immediate sales of goods for cash.

[3]We use the definition of "cost of lease services" employed in RAC's form contracts rather than the definition employed by the district court.

Appellees have successfully contended that the difference between the cash price and the total of payments to acquire title by renewing the agreement to ownership, i.e. the amount known as the cost of lease services, is actually entirely interest. Based on that central contention, the class members brought this action alleging that the rent-to-own contracts violated several state and federal statutes, including the Minnesota Consumer Credit Sales Act (CCSA), Minn. Stat. §§ 325G.15-.16, the Minnesota General Usury Statute, Minn. Stat. §§ 334.01-.03; and the federal Racketeer Influenced and Corrupt Organization statute (RICO), 18 U.S.C. § 1961.

The district court certified two questions to the Minnesota Supreme Court:

> 1. Are rent-to-own contracts consumer credit sales under Minn. Stat. § 325G.15?
>
> 2. Does the usury statute, Minn. Stat. § 334.01, apply to rent-to-own contracts?

On June 24, 1994, the Minnesota Supreme Court issued its opinions in Miller v. Colortyme, Inc., 518 N.W. 2d 544 (Minn. 1994) and Fogie v. Rent-A-Center, Inc., 518 N.W. 2d 544 (Minn. 1994). The Court answered both certified questions in the affirmative.

The plaintiff class then brought its motion for partial summary judgment seeking declaratory and injunctive relief. On September 28, 1995, the district court issued its order enjoining appellants from entering into credit sales transactions within the State of Minnesota which bear interest in excess of the maximum rate permitted under Minnesota law. The district court*s order also declared the rental purchase contracts to be consumer credit sales contracts subject to the Minnesota General Usury Statute. It declared that the rental purchase contracts constitute "unlawful debt" as defined under RICO. Finally, the district court declared the rental purchase contracts void *ab initio* and set forth a formula and procedure for determining money damages.

## II. Scope of Review

We must resolve issues relating to the jurisdiction of this court at the outset. We have jurisdiction to review the district court*s issuance

3

of the injunction under 28 U.S.C. §

1292(a)(1) which provides for appeal of interlocutory orders granting or refusing to grant injunctions.  Our jurisdiction under section 1292(a)(1) also extends to the remainder of the appealed order to the extent the injunction is "interdependent with" the remainder of the appealed order. In re Federal Skywalk Cases, 680 F.2d 1175, 1180 (8th Cir.), cert. denied, 459 U.S. 988 (1982); Union Nat. Bank of Little Rock v. Federal Nat. Mortg. Ass'n, 860 F.2d 847, 852 (8th Cir. 1988).  Under this standard, we have jurisdiction to review all portions of the order that are dependent on the resolution of the issues necessarily resolved in reviewing the injunction order.  Union Nat. Bank v. Federal Nat. Mortg. Ass'n, 860 F.2d at 852.  In other words, in addition to the injunction order, we may review other issues only if they are "inextricably bound up" with the injunction. Marathon Oil Co. v. United States, 807 F.2d 759, 764 (9th Cir. 1986), cert. denied, 480 U.S. 940 (1987).  We need not undertake a review of issues whose resolution is not necessary to effectively review the injunction. Mille Lacs Band of Chippewa Indians v. State of Minn., 48 F.3d 373, 375 (8th Cir. 1995).

We must determine the extent to which each issue RAC has appealed is relevant to, or interdependent with, or inextricably bound up with the injunctive relief granted in this case.

First, the propriety of the summary judgment in favor of the plaintiff class on its usury claim is properly before us on appeal, because the district court's determination that the rental purchase agreements are usurious is the very basis of the injunction.  Second, the issues surrounding the time-price doctrine and appellants' constitutional claims are properly before us because the district court's rejection of these defenses was a necessary predicate to entry of the injunction.

The remaining issues are more problematic.  RAC asks us to review the district court's finding that the rental purchase agreements satisfy the "unlawful debt" element of RICO.  The district court retained jurisdiction to make determinations on the remaining elements of the RICO claim.  In the interest of avoiding piecemeal appeals, it would be appropriate to review the RICO claim in its entirety after a final judgment has been rendered.  Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 480, 98 S.Ct.

5

2451, 2453 (1978).  Furthermore, it is not necessary to determine whether the rental purchase contracts satisfy the "unlawful debt" element

of the RICO claim in order to effectively review the injunction order. Accordingly, we decline to exercise jurisdiction to review this ruling. Mille Lacs Band, 48 F.3d at 375; Union Nat. Bank v. Federal Nat. Mortg. Ass'n, 860 F.2d at 852; Marathon Oil Co. v. United States, 807 F.2d at 764.

For the same reasons, we decline to review the district court's order establishing the formula for calculating money damages and the procedure by which class members are to assert claims for money damages. The district court retained jurisdiction to determine damages in this case. It is appropriate to avoid piecemeal appeals by deferring review of these issues until final money judgments have been entered. Gardner v. Westinghouse Broadcasting Co., 437 U.S. at 480, 98 S.Ct. at 2453. In addition, we do not find it necessary to resolve these issues in order to effectively review the injunctive relief granted here. Issues regarding the proper method for calculating damages are not inextricably bound up with the injunction issued here. Mille Lacs Band, 48 F.3d at 375; Union Nat. Bank v. Federal Nat. Mortg. Ass'n, 860 F.2d at 852; Marathon Oil Co. v. United States, 807 F.2d at 764.

### III. Standards of Review

We review a grant of summary judgment de novo. Hardin v. Hussmann Corp., 45 F.3d 262, 264 (8th Cir. 1995). We will affirm if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Id.; Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir. 1994).

Our review of the grant or denial of a permanent injunction is confined to the determination of whether the district court abused its discretion. International Ass*n of Machinists and Aerospace Workers v. Soo Line R. Co., 850 F.2d 368, 374 (8th Cir. 1988) (en banc), cert. denied, 489 U.S. 1010, 109 S.Ct. 1118 (1989). Abuse of discretion occurs if the district court reaches its conclusion by applying erroneous legal principles or relying on clearly erroneous factual findings. Id., 850 F.2d at 374; United States v. Yacoubian, 24 F.3d 1, 3 (9th Cir. 1995).

7

## IV.  Discussion

### A.  Summary Judgment on Usury Claim

The district court held that RAC's rent to own contracts are usurious as a matter of law.  Under the state general usury statute, four elements must be proven to establish a violation: 1) a loan of money or forbearance of debt; 2) an agreement between the parties that the principal shall be repayable absolutely; 3) the exaction of a greater amount of interest than is allowed by law, and 4) the presence of an intention to evade the law at the inception of the transaction.  Miller v. Colortyme, 518 N.W. 2d 544, 549-50 (Minn. 1994); Citizen's National Bank of Willmar v. Taylor, 368 N.W. 2d 913, 918 (Minn. 1985).

### 1.  Constitutional Challenges

The district court held that, under Minnesota law as set forth in Miller v. Colortyme and Fogie v. Rent-A-Center, the first two elements of usury are satisfied by operation of the CCSA and the general usury statute. 518 N.W. 2d at 549; 518 N.W.2d 544.  RAC argues that, by applying the CCSA and the usury statute to it's rental purchase transactions in this manner, the district court violated RAC's constitutional rights.

First, RAC contends the Miller interpretation renders the CCSA and the usury statute unconstitutionally vague, depriving RAC of the "fair notice" required by the Due Process Clause.  RAC also contends that the district court retroactively applied the Miller decision in violation of the Ex Post Facto and Due Process Clauses.  We reject both contentions.

### a.  Vagueness

The Supreme Court enunciated standards for evaluating claims of vagueness in Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2298-99 (1972).  First, the prohibitions of a statute must be defined clearly enough that a person of ordinary intelligence has a reasonable opportunity to know what is prohibited.  Second, the statute must provide standards that are clear enough that those charged with applying the statute are not required to make basic policy decisions on a subjective or arbitrary basis.  Id.

These standards are not to be applied mechanically.  Criminal enactments are to be examined under a stricter vagueness test while

8

economic regulation is subject to a more tolerant

examination. <u>Village</u> <u>of</u> <u>Hoffman</u> <u>Estates</u> <u>v.</u> <u>Flipside,</u> <u>Hoffman</u> <u>Estates,</u> <u>Inc.</u>, 455 U.S. 489, 498-99, 102 S.Ct. 1186, 1193 (1982). We reject RAC's contention that the strict test applicable to criminal statutes governs here. The statutes implicated in this case are primarily economic regulations which cover a narrow subject area and regulate the conduct of business enterprises. The punitive aspects of the usury statute impose only civil penalties. Under <u>Village</u> <u>of</u> <u>Hoffman</u>, we conclude that the broader, more tolerant test of vagueness is required here. 455 U.S. at 498-99, 102 S.Ct. at 1193.

Applying these standards, we hold that the <u>Miller</u> decision of the Minnesota Supreme Court does not render the CCSA or the general usury statute unconstitutionally vague. The CCSA defines "Sale of Goods" in terms that clearly encompass terminable leases including RAC's rental purchase agreements. Minn. Stat. 325G.15 subd. 5. The CCSA incorporates this definition of "Sale of Goods" into its definition of "Consumer Credit Sales". Minn. Stat. 325G.15 subd. 2. Any lease that constitutes a consumer credit sale under the CCSA is deemed a sale for all purposes. Minn. Stat. 325G.16 subd. 4.

RAC contends that their rental purchase agreements, though statutorily defined as "sales", cannot be "consumer credit sales" because the seller does not extend credit and the buyer does not incur debt. This construction is untenable because it would render section 325G.15 subd. 5 entirely meaningless and unnecessary. Moreover, the terms of RAC's rental purchase agreements provide for buyers to acquire possession of goods while deferring payment over time. These are the essential attributes of an ordinary credit sale. It is clear that the legislature intended for CCSA consumer protections governing ordinary credit sales to also govern rental purchase agreements having the same essential attributes. Accordingly, the construction proposed by RAC would render subdivision 5 meaningless and would also frustrate the legislative intent and hinder the consumer protection objectives of the statute.

These statutory provisions give sufficient notice to those engaged in the rent-to-own industry that their rental purchase contracts fall within the CCSA and are subject to usury laws. They also provide standards

10

by which the courts can apply the statutes without engaging in subjective or arbitrary policy making decisions. Accordingly, the statutes pass the vagueness

test enunciated in <u>Grayed</u> <u>v.</u> <u>City</u> <u>of</u> <u>Rockford</u> and <u>Village</u> <u>of</u> <u>Hoffman</u> <u>Estates</u>.

    b.  <u>Retroactive</u> <u>Application</u> <u>of</u> <u>Miller</u> <u>v.</u> <u>Colortyme</u>

Two elements are necessary for a statute to be ex post facto in violation of the Constitution[4]:  it must apply to events that occurred before its enactment; and it must disadvantage the offender affected by it. <u>Miller</u> <u>v.</u> <u>Florida</u>, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451 (1987); <u>Weaver</u> <u>v.</u> <u>Graham</u>, 450 U.S. 24, 29, 101 S.Ct. 960, 964 (1981).  The CCSA, the RPAA, and the general usury statute existed in their present form when the parties entered into the rental purchase contracts at issue in this case. Accordingly, the statutes themselves are not subject to ex post facto analysis.

A judicial decision which meets both elements also violates the ex post facto clause and cannot be applied retroactively.  <u>Bouie</u> <u>v.</u> <u>City</u> <u>of</u> <u>Columbia</u>, 378 U.S. 347, 353-54; 84 S.Ct. 1697, 1702-1703 (1964).  This occurs when a judicial decision unforeseeably enlarges a statute to cover conduct that was not offensive before the judicial pronouncement.  <u>Id</u>.  If the judicial construction is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue" it violates the ex post facto clause and must not be given retroactive effect.  <u>Bouie</u> <u>v.</u> <u>City</u> <u>of</u> <u>Columbia</u>, 378 U.S. at 354, 84 S.Ct. at 1703.

RAC contends the Minnesota Supreme Court's decision in <u>Miller</u> <u>v.</u> <u>Colortyme</u> changed the substantive elements of a usury claim by making it unnecessary for plaintiffs to prove the first two elements, the extension of credit and the absolute obligation to repay it.  In RAC's view, the <u>Miller</u> decision acts as an ex post facto law and must not be applied retroactively.

The <u>Miller</u> decision did not change the elements of a usury claim. It is a judicial interpretation of the statutory scheme that existed long before the present contracts were made.  The judicial construction in <u>Miller</u> is not "unexpected or indefensible by reference to" the statutory

---

[4]We assume without deciding that the third critical element, that the statute be a criminal or penal law, is satisfied in this case.

12

framework already in place.  On the contrary, the judicial construction of those statutes is reasonable and foreseeable, gives full meaning to the statutory language, operates in the

manner clearly intended by the legislature, and furthers the consumer protection objectives of the statutes. In addition, <u>Miller</u> does not overrule any prior contrary ruling of the Minnesota Supreme Court upon which RAC might justifiably have relied.

In short, <u>Miller</u> did not change existing law- it simply stated a reasonable and correct interpretation of the law which differs from the erroneous view RAC had chosen to follow.

For the reasons stated above, RAC's constitutional challenges to the <u>Miller</u> <u>v.</u> <u>Colortyme</u> decision must be rejected. The district court was correct in ruling in accordance with <u>Miller</u>, that the first two elements of the usury claim in this case are established by operation of the CCSA and the usury statute.

2. <u>Factual</u> <u>Challenges</u>

RAC contends the plaintiff class failed to carry its burden of proving the third and fourth elements of their usury claim: exaction of interest at an illegal rate and the intent to evade the usury law when the contract was made. We view the evidence in the light most favorable to RAC. <u>Bashara</u> <u>v.</u> <u>Black</u> <u>Hills</u> <u>Corp.</u>, 26 F.3d at 823.

a. <u>Amount</u> <u>of</u> <u>Interest</u> <u>Charged</u>

The plaintiff class urged the district court to find that the difference between the total payments needed to purchase an item by renewing the contract to ownership and the cash price was entirely interest. It cannot be disputed that this amount, described in the rental purchase agreements as the "cost of lease services", is 82% of the cash price in each contract. Adjusting this figure for the duration of the various contracts among the plaintiff class members produces annual percentage rates ranging between 46% for the longest contract and 746% for the shortest. Obviously, these rates far exceed the legal limit under the usury statute, Minn. Stat. § 334.01.[5]

RAC contends that the cost of lease services cannot be entirely

---

[5]The general usury statute permits a maximum interest rate of six percent per annum unless the rate is contracted for in writing, in which case a rate of eight percent may be charged. Minn. Stat. § 334.01.

interest because it includes the value of services such as delivery, maintenance, repair, and contract options.  If the case had gone to trial, RAC intended to present evidence to show the value of these additional

services.

The district court found no evidence that the members of the plaintiff class agreed to pay for any additional services. The court also found that, even if the "cost of lease services" figure included both interest and the value of additional services, no reasonable fact finder could conclude that the portion attributable to the value of additional services was great enough so that the interest portion was below the statutory usury rate. A close review of the record discloses that the district court was correct in both findings.

It is proper to exclude from the interest calculation "a certain sum, agreed to be paid the lender for services and expenses in connection with the loan" if the charge is reasonable and bona fide. Hobart v. Michaud, 219 N.W. 878, 879 (Minn. 1928); Daley v. Minnesota Loan and Inv. Co., 45 N.W. 1100, 1101 (Minn. 1890). However, if the fee is not related to any separate expenses but is compensation for the use of the money loaned, it must be considered interest. Vanderweyst v. First State Bank of Benson, 425 N.W.2d 803, 811 (Minn.), cert. denied, 488 U.S. 943 (1988).

RAC contends the plaintiff class members agreed to pay the value of additional services because they each agreed to the general "cost of lease services" term in the written contracts. RAC's expert claimed that the value of each of the following services should be excluded from the interest calculation: delivery, maintenance, repair and replacement. RAC contends it is not required to itemize the additional services covered by the term "cost of lease services".[6]

The undisputed evidence shows that the parties contemplated each of the services identified by RAC's expert would be provided without charge. In the express written terms of each of the contracts, the delivery charge indicated is "$0.00". In its published advertisements, RAC announced that delivery, repair, service, set up, and "loaners" were free services. We

---

[6]We believe the RPAA requires full disclosure of the service charges associated with a rental purchase contract. Minn. Stat. § 325F.86-.87. However, compliance with the RPAA is not the issue. Itemization of charges is relevant to the usury analysis only if it tends to prove or disprove that "cost of lease services" is truly a service charge rather than interest.

are convinced that no fact finder could view this evidence and reasonably conclude that the plaintiff

class members knowingly agreed to pay for these services as "cost of lease services".

RAC's expert also identified certain "contract options" including the right to continue renting; the right to stop renting; and, the right to obtain ownership over time by the two methods described in the contracts. RAC contends the value of these "options" should be excluded from "cost of lease services" in calculating the interest charged by RAC.

The Minnesota Supreme Court, after fully considering the very contracts at issue here, including the rights described now by RAC as "options", ruled that these contracts are consumer credit sales contracts. Fogie v. Rent-A-Center, 518 N.W. 2d at 544. Describing the contract's terms as "options" does not change its nature. These so-called "options" are simply the rights enjoyed by any consumer credit sale purchaser. The compensation paid for the right to acquire ownership by paying the purchase price over time in a consumer credit sale is interest. Likewise, the compensation collected by the seller for the risks associated with collecting the purchase price over time is interest. Simply calling the rights and risks associated with credit sales "options" does not entitle the seller to additional compensation in excess of the usury rate.

Accordingly, by process of elimination, we must conclude that the "cost of lease services" term in the rental purchase contracts is interest. To the extent the value of any additional service or option is included, we agree with the district court that no fact finder could reasonably conclude such value is sufficient to reduce the 46% to 746% range of annual percentage rates charged by RAC to a nonusurious level.

The district court properly found  that the third element of the usury claim has been established.

> b. Intent

RAC contends that summary judgment is improer because the plaintiff class failed to prove the fourth element, intent to evade the usury law. "Intent" for the purposes of usury law consists in the intent to take more interest than allowed by law; it is not necessary that the person taking the interest knows he is violating the usury law. Trapp v. Hancuh, 530 N.W.2d  879, 885 (Minn. 1995); Citizen's Nat. Bank of Willmar v. Taylor,

18

368 N.W.2d 913, 919 (Minn. 1985).  If the evidence shows a direct contract whereby the lender exacts excessive

interest, the intent to evade the law is presumed. <u>Fred</u> <u>G.</u> <u>Clark</u> <u>Co.</u> <u>v.</u> <u>E.C.</u> <u>Warner</u> <u>Co.</u>, 247 N.W.225, 239 (Minn. 1933).

In this case the contracts provide for RAC to exact interest in excess of the usury rate and there is no claim by RAC that it did not intend to collect less money than is stated in the contracts. Accordingly, as a matter of law, RAC had the requisite intent under the usury statute. <u>Miller</u> <u>v.</u> <u>Colortyme</u>, 518 N.W.2d at 550.

RAC contends that it should be relieved of the presumption of intent because it reasonably relied in good faith on the existing law. <u>Washington</u> <u>Federal</u> <u>Sav.</u> <u>&</u> <u>Loan</u> <u>Ass'n</u> <u>of</u> <u>Stillwater</u> <u>v.</u> <u>Baker</u>, 374 N.W. 2d 786, 788 (Minn. App. 1985). We reject this argument for the same reasons we rejected RAC's constitutional challenges. RAC's reliance on a strained and erroneous construction of the statutory scheme is not the kind of good faith reliance that brings this exception into play.

3. <u>Time-Price</u> <u>Doctrine</u>

RAC contends that the plaintiff class is not entitled to judgment as a matter of law because their rental purchase contracts fall within the time-price doctrine. This doctrine was based on the central premise that there can be no usury without a loan or forbearance of money and that the sale of property in a time-price transaction involves no loan. <u>Dunn</u> <u>v.</u> <u>Midland</u> <u>Loan</u> <u>Finance</u> <u>Corporation</u>, 289 N.W. 411, 413 (Minn. 1939); <u>St.</u> <u>Paul</u> <u>Bank</u> <u>for</u> <u>Cooperatives</u> <u>v.</u> <u>Ohman</u>, 402 N.W.2d 235, 238 (Minn. 1987). The time-price doctrine was judicially created and is not an exception to usury law, but recognizes transactions which are outside the scope of usury law. <u>St.</u> <u>Paul</u> <u>Bank</u> <u>v.</u> <u>Ohman</u>, 402 N.W.2d at 238.

RAC's argument is foreclosed by the rulings of the Minnesota Supreme Court. In <u>Fogie</u> <u>v.</u> <u>Rent-A-Center,</u> <u>Inc.</u>, the Court ruled in no uncertain terms that the usury statute, Minn. Stat. § 334.01 applies to rent-to-own contracts. 518 N.W.2d at 544. Accordingly, RAC cannot now argue that its rental purchase agreements are transactions which fall outside the scope of the usury law. Furthermore, the loan or forbearance element of usury, missing in time-price transactions, is satisfied in rental purchase agreements by operation of statute. <u>Miller</u> <u>v.</u> <u>Colortyme,</u> <u>Inc.</u>, 518 N.W.2d at 549. In addition, the Minnesota Supreme Court has been

20

unwilling to expand the time-price doctrine unless justified by economic needs and social attitudes making the protections of the usury statute unnecessary. Rathbun v. W.T. Grant Company, 219 N.W.2d 641, 647 (Minn. 1974). We find no such justification here.

"We are bound to apply state law as we are able to discern it from the rulings of the state's courts." Boner v. Eminence R-1 School Dist. 55 F.3d 1339, 1341 (8th Cir. 1995), quoting Jackson v. Anchor Packing Co., 994 F.2d 1295, 1310 (8th Cir. 1993). Under the applicable state case law, it is clear that RAC's rental purchase contracts do not fall within the time-price doctrine and are subject to the usury statute.

B. Injunction Order

We review the district court's grant of a permanent injunction for an abuse of discretion. United States v. Green Acres Enterprises, Inc., 86 F.3d 130, 132 (8th Cir. 1996); Soo Line R. Co., 850 F.2d at 374. Abuse of discretion occurs if the district court reaches its conclusion by applying erroneous legal principles or relying on clearly erroneous factual findings. Id.

The Eigth Circuit balances four factors to determine whether injunctive relief is warranted: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the harm to be suffered by the nonmoving party if the injunction is granted; (3) the probability that the movant will succeed on the merits; and (4) the public interest. Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981)(en banc). The standard is the same for a permanent injunction except that the movant must show actual success on the merits. Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987). The district court did not make explicit findings with respect to these four factors. However, by prevailing on its usury claim the plaintiff class has demonstrated that the four factors of this test overwhelmingly militate in favor of an injunction.

As demonstrated in this opinion, the plaintiff class has shown actual success on the merits. In addition, public interest overwhelmingly favors enjoining these contracts. The public policy of Minnesota is revealed in its consumer protection statutory scheme including the usury statute, the

21

CCSA and the RPAA.  The actions enjoined here violate the letter and spirit of this statutory scheme and are clearly against the public interest.  To balance against this, the only

harm to RAC is the loss of the usurious portion of its income.

RAC contends that the plaintiff class has failed to show irreparable injury because the district court has established a formula for calculating money damages. However, this formula only compensates for past damages and only reaches class members who have been identified. Estimating future losses of similarly situated individuals if RAC continues its practices is virtually impossible, as is identifying those potential victims of their practices. Giving due weight to each of the four factors, we are satisfied that there has been no abuse of discretion by the district court.

## V. Conclusion

Based on the foregoing, the district court's order granting summary judgment for the plaintiff class and enjoining RAC from entering into usurious credit sales transactions is AFFIRMED.

A true copy.


Attest:


CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

23